BLACK et al., Appellants, v. EARLY, Collector; MITCHELL et al., Judges County Court; MILLER, County Clerk; and SCHOOL DISTRICT OF THE TOWN OF HURDLAND, Appellants.

Division One, December 24, 1907.

1. **TAXES: Injunction: De Facto School District: Collateral Attack.** For the proper disposition of an injunction to enjoin the collection of school taxes, it is not ordinarily necessary to determine whether the school district exists as a body corporate *de jure* or as one *de facto;* for, a *de facto* body corporate, acting under color of law and legal right in conducting a public school for several years, is as free from collateral attack on its corporate existence as one *de jure*.

2. **SCHOOL DISTRICT: Corporate Existence: Remedy.** If a going corporation be without legal existence it must be dissolved, if at all, by *quo warranto*. The courts will not, in an injunction suit to enjoin the collection of school taxes, determine that the organization of the district which has acted under a color of right in conducting a public school for several years, was invalid and illegal. Being a *de facto* corporate body, it is beyond the reach of collateral attack.

3. ———: ———: ———: **Exception to Rule.** Nor does the fact that the school district voluntarily became a party to the injunction suit brought against the county collector, county court and county clerk, and tendered the issue of its corporate existence, estop it from raising and maintaining the defense that the validity of its organization cannot be inquired into in the injunction suit to restrain the collection of taxes levied or to be levied for its support.

4. **SCHOOL TAXES: Invalid in Part: Injunction of Whole.** Where the estimate of the school board is for forty cents to support the school, and twenty-five cents for a sinking fund and twenty-five cents to pay interest, and the estimate for the sinking fund and interest tax is erroneous and illegal, the court should not enjoin the collection of all the taxes for the year, but the forty-cent levy being valid the plaintiffs do not offer to do equity while seeking equity unless they pay or tender payment of the forty-cent tax. Nor did the estimate set out in this case, when properly construed, mean that the board certified that a levy of forty cents on the $100 was sufficient for all purposes.

5. ———: **Estimate: For Sinking Fund and Interest: Before Bonds Are Sold.** At the time the school board made its annual estimate to the county clerk of the amount of levy and taxes needed, in which it included an estimate of twenty-five cents on the $100 for a sinking fund and twenty-five cents for interest, the school bonds to be used in building a school house had been voted and possibly issued, but had not been sold, but shortly thereafter, and long before taxpaying time, they were sold, became an indebtedness of the district, and the school house was built out of the proceeds thereof. *Held*, that, under the self-enforcing words of the Constitution (sec. 12, art. 10), providing that "any school district, incurring an indebtedness, requiring the assent of the voters as aforesaid, shall, before or at the time of doing so, provide for the collection of an annual tax sufficient to pay the interest of such indebtedness as it falls due, and also to constitute a sinking fund for the payment of the principal thereof," the estimate not only properly contained items for a tax for a sinking fund and for interest, but the court erred in enjoining the collection of the tax levied for these purposes on the theory that the bonds had not been sold at the time the estimate was made.

6. ———: **Injunction: Responsive to Pleadings.** The decree in an injunction should be responsive to the pleadings. Where plaintiffs were not assailing a tax levy on the ground assigned by the decree for invalidating it, the decree is erroneous.

Appeal from Marion Circuit Court.—*Hon. D. H. Eby,* Judge.

REVERSED AND REMANDED (*with directions*).

*O. D. Jones, George A. Mahan* and *W. N. Doyle* for plaintiffs-appellants.

(1) Was the legal existence of defendant school district put in issue? It demanded to be, and was made a party defendant on its application against plaintiff's consent. It asserts the facts in detail of its organization and legality of it. Plaintiffs must admit or deny it and make the issue by reply. They made the issue under the provisions of section 746, Revised Statutes 1899. School District v. Wallace, 75 Mo. App. 317. The statute applies to public corporations. Prince v. Town of Lutesville, 25 Mo. App. 317; Walker v. Point Pleasant, 49 Mo. App. 244; Orrick School District v. Dorton, 125 Mo. 439; Railroad v. Shambaugh, 106 Mo. 557; City of Hopkins v. Railroad, 79 Mo. 100; State ex rel. v. School District, 79 Mo. App. 103. No objection was made by demurrer or reply, as the record now stands, to the school district defendant being a party. State ex rel. v. Exploration Co., 97 Mo. App. 226; Johnson v. Bank, 102 Mo. App. 395; Mulheim v. Simpson, 124 Mo. 610; Dodson v. Lomax, 113 Mo. 555. (2) (a) Defendant school district was not legally organized. No legal petition was presented to the board of the three directors. It does not aver it was signed by "ten taxpayers of the district." This is a jurisdictional fact, and unless it was so signed by taxpayers no election could be called. Perryman v. Bethune, 89 Mo. 158; School District v. Pace, 113 Mo. App. 134. (b) The record shows not more than six of the petitioners were taxpayers. State ex rel. v. Fasse, 189 Mo. 153. These defendants assert the *de jure* organization of defendant school district, and their derived right by it in law to levy taxes on its "estimates"

of its officers, and it devolves the burden on them to show it. Rousey v. Wood, 57 Mo. App. 650. (c) The statute declares (sec. 9861) on the presentation of such a petition signed by ten qualified voters and resident taxpayers of the district, the board "shall order an election for that purpose." But before it could order an election it must declare whether the petition was so signed. If it decided it was so signed, it should enter that fact on the record in its order. If not, it should make no order. There is no claim they made any written order, and even the oral evidence does not show they made any investigation of that matter. In fact, no ten of the signers of the petition were taxpayers. Not to exceed six of them were. State ex rel. v. Wilson, 99 Mo. App. 675. The duty of the board is the same as the county court on receipt of the petition of the inhabitants of an unincorporated town. State ex inf. v. Fleming, 147 Mo. 11; Hill v. Kahoka, 35 Fed. 32. (d) The order or action of the corporation can only be shown by the record. Kane v. School District, 48 Mo. App. 413; State ex rel. v. Ray, 55 Mo. 446; State v. Lawrence, 178 Mo. 350; State ex rel. v. Lockett, 54 Mo. App. 202; State ex rel. v. Gill, 190 Mo. 89; 20 Am. and Eng. Ency. Law (1 Ed.), 510-11. (3) No notice of the election was given as required by the statute. The one given was signed by the clerk, Townsend. It does not suggest, in any manner, that the board ordered it, or had anything to do with it. In fact, it negatives that idea, by it being inserted in the notice of the annual meeting and reciting that, "among other things specified by the law," this proposition would be considered. It thus plainly negatives completely the idea that the board, on petition duly presented to it, had ordered "that an election be held for that purpose." State ex rel v. Gill, 190 Mo. 89; McPike v. Sheriff, 51 Mo. 63; State v. Railroad, 75 Mo. 526. "When power to call an election is conferred in law on certain offi-

cers, it cannot be done by any others.'' 10 Am. and
Eng. Ency. Law (2 Ed.), 624-5; Stephenson v. Mc-
Lean, 2 Tex. Civ. App. 321; People v. Rafter, 89 Ills.
337. The object of the election must be plainly stated.
Railroad v. Sparta, 77 Ill. 505; People v. Hamilton
County, 3 Neb. 244; Cook v. Davis County, 36 Ind. 320;
Thatcher v. People, 93 Ill. 240; Haywood v. Guilford,
69 Mo. App. 1. (4) (a) The provisions of sections
9861 and 9864 are imperative; within four days after
the annual election or an election, the newly-elected
board must meet, qualify and organize. Mechem on
Public Officers, sec. 178; McCreary on Elections (3
Ed.), sec. 141; School District v. Wallace, 75 Mo. App.
317. (b) It is entirely another corporation. Another
being in law of another class. And the plain, undis-
puted fact is only one of them has ever taken the oath
to serve that district until this day. And he was
sworn after the occurrence of all the facts out of which
this litigation grows. State v. Dierberger, 90 Mo. 369;
People v. Weaver, 89 Ill. 348; Patterson v. Miller, 2
Metc. 493; Harbaugh v. Windsor, 38 Mo. 327; Wilson
v. Kimmell, 109 Mo. 263; State v. Findley, 101 Mo.
218; State ex rel. v. Perkins, 139 Mo. 106. (5) The
defendants, county officers, all assert that the district
defendant is one *de jure* and recognized as such by
them. It thus devolves on them to show that their
co-defendant district is a corporation *de jure,* for if
there be no corporation there can be no office—if no
office no officer, and its estimates are nullities, and de-
fendants are in law trespassers. Ayers v. Latimer,
57 Mo. App. 78; Matter v. Quinn, 152 N. Y. 89; Daniel
v. Hutchinson, 4 Tex. Civ. App. 239. If the defendant
school district was not legally organized, then there
was no office to be filled. If there was no office to be
filled, there was no corporation or officer *de facto.*
State v. Law, 16 R. I. 620; In re Heinke, 31 Kans. 718;
Jester v. Spurgeon, 27 Mo. App. 477; Ex parte Snyder,

Black v. Early.

64 Mo. 58; State v. O'Brien, 68 Mo. 153; Walker v. Ins. Co., 62 Mo. App. 209.

*L. F. Cotley, F. H. McCullough* and *J. C. Dorian* for defendants-appellants.

(1) The law is well settled in this jurisdiction that the right to assail the validity of a corporation collaterally by injunction in the manner attempted in this petition, is not available to individuals, but belongs alone to the State in a direct proceeding by *quo warranto*. Kayser v. Trustees of Bremen, 16 Mo. 88; Burnham v. Rogers, 167 Mo. 21; School District No. 35 v. Hodgin, 180 Mo. 78; Franklin Avenue German Savings Institute v. Board of Education of the Town of Roscoe, 75 Mo. 411; Stamper v. Roberts, 90 Mo. 687; State ex rel. v. Miller, 113 Mo. App. 665; St. Louis v. Shields, 62 Mo. 247; Fredericktown v. Fox, 84 Mo. 65; State ex rel. v. Birch, 186 Mo. 219; Bank v. Rockefeller, 195 Mo. 42; State v. Fuller, 96 Mo. 167; Flynn v. Neosho, 114 Mo. 573. (2) The findings and judgment against the defendants to the effect that the tax levy for the year 1905 was null and void, because the estimate for such levy was made before the bonds were negotiated, are not responsive to the issues made by the pleadings. The petition proceeds upon the theory that the tax levies for 1905 and 1906 are both null and void, because the school district is not a corporation and had no authority to issue any bonds at all, or levy any taxes for any purpose whatever. It was not alleged as a ground for relief, nor tendered as an issue on the trial, that the tax levy of 1905 was prematurely made. Roden v. Helm, 192 Mo. 93; Schneider v. Patton, 175 Mo. 723; Irwin v. Childs, 28 Mo. 576; Newham v. Kenton, 79 Mo. 385; Ross v. Ross, 81 Mo. 84; Reed v. Bott, 100 Mo. 67; Burnham v. Rogers, 167 Mo. 24.

LAMM, J.—Plaintiffs, Black, Buhl and Delaney, resident taxpayers of the district, for themselves and

forty others unnamed (designated in the petition and the briefs as "the Forty"), on June 2, 1906, sued in the circuit court of Knox county to enjoin the collection of taxes levied against their properties for the year 1905 and about to be levied for the year 1906 for the support of the public school of the School District of the Town of Hurdland, and to pay the interest on certain bonds of said district and to create a sinking fund to pay the principal.

A preliminary writ went. Thereat the venue of the cause was changed to the Hannibal Court of Common Pleas on plaintiffs' application. At a hearing there, the chancellor made the preliminary writ permanent as to the taxes for the year 1905. As to the taxes of 1906, it was dissolved. The decree, having split the relief, proceeded to halve the burden of costs, taxing one modicum against plaintiffs and the other against defendants, and from that decree the parties litigant prosecute cross-appeals.

The case was lodged in this court on the 26th day of June, 1907. On the same day defendants filed a motion to advance. There was no counter showing made on the allegations of that motion. Therefrom it appeared that a proceeding in *quo warranto*, involving the life of the School District of the Town of Hurdland, was pending here for hearing at the October term, 1907. Therefrom it further appeared that because of the non-payment of taxes by plaintiffs (and "the Forty"), and because one of the plaintiffs, as treasurer of the School District of the Town of Hurdland, whose bond was made by his co-plaintiffs as sureties, refused to turn over the money of said district then in his hands, without suit (litigation being pending on said bond, see State *ex rel.* v. Delaney, 122 Mo. App. 239), the public school in the School District of the Town of Hurdland had been first crippled and then closed.

The premises considered, the Court In Banc ad-

vanced this case to be heard with the *quo warranto,* and assigned it to Division One to be heard at said October term. At that term both cases were argued and submitted, and the reasons good for use in advancing the case for speedy hearing, still existing, justify us in determining it speedily in advance of the *quo warranto*—since, whatever may be the outcome in the latter cause, no apparent public good can be furthered by putting the public school of Hurdland in the way of sickening, languishing and dying of starvation. Such *coup de grace* as death, if it come at all, should be. seemly and at the hands of the law; and a prior state of suspended animation or paralysis ought not to be allowed to come about through drawn-out torture.

The pleadings are long, covering 61 pages of print, and need not be reproduced. A summary thereof will be sufficient upon which to predicate and announce our views of their legal intendment, and decide the case.

Counsel are not in accord on the scope and meaning of the charging part of the petition. In its warp and woof there are interwoven, with allegations of ultimate and substantive fact, narrations of coloring matter, recitals of extraneous facts, matter of evidence, matter of inducement, matter of argument and conclusions of law—thereby making its analysis and a differentiation of the elements constituting the grounds upon which relief is sought to be predicated, a nice, a baffling and anxious task. Ordinarily it would be wide of the mark to go to the evidence of a lay witness to get at the gist of a pleading. But, in the wilderness of litigation, a case may arise where light may be hailed as welcome through any window; and in this case, we may borrow with profit from the testimony of Mr. Delaney, one of the plaintiffs and a man wielding a hammer of common sense and able to hit the nail on the head. On cross-examination, he testified: "They attempted to organize under the Village Act." He was

then asked: ''What do you mean by 'attempting to organize under the Village Act?'' He answered: ''I mean that we attempted—some of the folks attempted —to organize under the Village Act, *and now it is in litigation to see whether they have or not. That is my idea of it.*'' His ''idea'' of the issue tendered by the petition is ours.   For, doing the best that in us lies, and liberally construing the pleading, it may be justly said that the gravamen of plaintiffs' complaint is that the School District of the Town of Hurdland was illegally organized in 1902 out of a former common school district; that there was a common school district, known as School District No. 2, Township 15, Range 13, Knox county, in existence prior to 1902 for twenty years, and it is charged it was abortively attempted to change this district, by a mere colorable following of the statutory path of evolution blazed out in the Village Act (Art. 2, chap. 154, R. S. 1899, entitled City, Town and Village Schools) into a village school district in said year.   The bundle of things which, in detail and as a whole, go to make up the vice of alleged illegality in the organization of the new district is charged with a wealth of detail—the pleader *(passim)* laying stress upon the issuing of $5,700 in bonds by the village district to build a brick schoolhouse, and the taxation incident to that bond issue.

It is plain that the taxation arising from the issuing of these bonds is where the shoe pinches.   It is plain, too, that the pleader desired the court to understand that the controlling reason for declaring the taxes of 1905 and 1906 to be illegal is because of the pleaded infirmities in the corporate birth and life of the School District of the Town of Hurdland, and not otherwise.

To these general charges of illegality (split into sundry specifications) there is added an allegation that the levying and spreading of the taxes of 1905 were

208 Sup—19

"without any estimate made or certified by the secretary of the board of directors of the School District of the Town of Hurdland and without any estimate, pretended or claimed to be made in the name or to represent the School District No. 2, Township 15, Range 13, being then on file in the office of the clerk of the county court of Knox county." The tax levy struck at for 1905 was for ninety cents on the $100 of valuation.

As to the year 1906, it is alleged that the "pretended board of the District of the Town of Hurdland caused to be made an estimate of taxes to sustain the public school of said pretended District of the Town of Hurdland for the next school year and have caused one G. L. Cockrum, as district clerk, to certify an estimate, and caused the same to be filed in the office of the clerk of the county court of Knox county." This estimate was ninety cents on the $100 of valuation, and it is alleged that a levy is about to be made and spread on the tax books for that amount.

It is not charged in the petition or shown in the proof that plaintiffs or either of them actually offered to pay and tendered payment of any part of the ninety cents levy, which levy covered the whole school tax, including twenty-five cents on the $100 for a sinking fund to pay said bonds, and twenty-five cents on the $100 to pay the interests thereon.

It will be observed that the former common school district is not a party to this proceeding; that the village school district is a party; that the theory of the pleader was that the new district, illegally formed, is illegally undertaking to arrogate to itself the right to run a school, borrow money, build a school house, make estimates for taxing purposes and cause those taxes to be levied against plaintiffs' property; and that the pleader's case hinges on that usurpation of power.

Keeping the foregoing in mind and the further

fact that it is not contended or pretended that the common School District No. 2, Township 15, Range 13, of Knox county, is a live, going body corporate or has run a school for four years prior to the suit (See sec. 9741, R. S. 1899), we come next to a cautious and peculiar averment of tender in plaintiff's bill, thus:

"That it is a mixed question of law and fact as to whether or not in law the said School District No. 2, Township 15, Range 13, West, has by the highhanded proceedings aforesaid and the non-exercise of its powers in law lost its organization as a school district. That on the subject these plaintiffs have not knowledge and information sufficient to form a belief as to the fact in law, and whether it would be one or the other. But they now say and offer that if the court shall ascertain and determine that said school district legally exists and that any school taxes have been legally levied in its name for the three years 1905 and 1906, and at the time of trial are legally due it, from these plaintiffs and those in whose behalf they sue, then they say they are ready and willing to pay any and all such taxes thus ascertained to be legal and legally due from them."

The answer of the School District of the Town of Hurdland, after certain admissions, followed by a denial of all other averments, in substance avers a compliance with statutory provisions in reorganizing the former common school district into the village school on the presentation of a proper petition and fifteen days' notice at the annual school meeting in 1902; a certification of the proceedings of that meeting by its secretary and chairman, and a record of a copy thereof in the district records; that a board of six directors was elected and qualified, one of them being the plaintiff William Delaney; that the proceedings were regular and resulted in the legal organization of a village district; that ever since that time the business of the dis-

trict has been conducted by a board of six directors, as provided in the Village Act. In other words, it pleads a *de jure* organization.

In another paragraph, as a full defense, are alleged the particulars in making estimates, employing teachers, conducting a school, receiving taxes and school moneys through the treasurer of the school board of the Town of Hurdland, from the county treasurer and the collector. It is alleged that the county officers and the public have recognized the School District of the Town of Hurdland as a *de facto* school district, having a legal right to exist and conduct a school; that it did conduct a school, generally patronized by the public, and patronized by the plaintiffs and the "Forty" from the time of its organization, down to the present moment. In other words, it pleads a *de facto* organization. Wherefore, defendant says plaintiffs ought not to be permitted to maintain their suit.

In another paragraph, as a further full defense, the participation of plaintiffs in the organization of the village district, their several participation as officers of the district (its directors and treasurer), respectively, from time to time since its reorganization, are set forth, together with their recognition of it by the payment of their taxes and sending their children to the school from 1902 to 1905, and until steps were taken to build a new school house in May of the latter year. Wherefore, it is averred plaintiffs are guilty of laches in bringing this suit, and are estopped to maintain it or to assert that the village school district is not legally organized.

Finally, in another paragraph, it is alleged that plaintiffs brought a prior proceeding by *quo warranto,* that after the election voting $5,700 of bonds to build and furnish a new school house was held, the plaintiffs in this suit instituted a proceeding by *quo warranto* against the directors of the School District of the Town

of Hurdland, challenging the legal existence of the village school; that an answer was filed, a trial had, and it was adjudged and determined that the School District of the Town of Hurdland was duly and legally organized; that the issues in the *quo warranto* proceeding and in the present proceeding are identical. Wherefore, defendant pleads *res judicata* and says that the judgment in the *quo warranto* is a bar and a record estoppel to the maintenance of this suit.

The defendant Miller, county clerk, the defendants Mitchell and McCauley, as judges of the county court, and the defendant Early, as collector of Knox county, filed separate answers, setting up in part the same matter by way of defense.

Separate replies were filed to these answers. To the replication to the answer of the defendant school district there was attached an affidavit, denying that the School District of the Town of Hurdland was a body corporate at the time its answer was filed or at any time mentioned in the petition. That replication further set up matter in avoidance of the plea of *res judicata*.

The whole record of the trial, covering five hundred pages, is brought here as and for an abstract. It has been submitted to a consideration line by line. In the view we take of the issues and the law applicable to those issues, it would serve no useful purpose to set forth the testimony. For our purpose, the tendency of the evidence may be summed up as follows:

(a) Plaintiffs introduced evidence tending to show that the statute was not complied with in the organization of the village school district in more ways than one; and defendants introduced evidence tending to show that in its organization the steps taken were substantially the statutory steps.

(b) Plaintiffs introduced evidence tending to show there was no record of the meeting of the direc-

tors of the old district at which the petition was pre-
sented asking for an order that an election be called
to vote on a village organization; further, that there
was no record whatever of the proceedings of the an-
nual meeting at which the election was held; and evi-
dence directed to showing there were no records kept
after the reorganization, for one or two years. *Contra,*
defendants introduced testimony tending to show that
the records were kept by the clerk or secretary on loose
pages, placed for safe keeping within the school record
book, and defendants produced and identified these
loose sheets at the trial; that the school record book
had been largely written up under the appropriate
headings of that book, and that pending the getting
of a new record the proceedings were kept on such
loose sheets to be copied into such new record, which
was subsequently done; that a record was kept of the
meeting of the directors of the old district at which the
petition for reorganization was presented and acted
upon, and notices ordered posted (and posted in due
time) calling an election; that such record was lost,
and the contents thereof were supplied by oral testi-
mony—the said petition and one of the written notices
being produced. It may be said that the testimony
creates an unfavorable impression on our minds in that
it shows inexcusable inattention and slovenly disorder
in keeping the school records.

(c)    Plaintiffs introduced evidence tending to
show that from 1902 to the beginning of 1905 the in-
exact terminology in the school records, in the tax
books, in the books of the county collector and county
treasurer, in the books of the treasurer of the village
school district, in the estimates and enumeration lists,
in contracts made and warrants drawn and in the oaths
of the directors would agree as well with the continued
existence of the old common school district as with the
existence of a village school district having a corporate

statutory name. *Contra,* it was shown by defendants
that the school record book had blank forms and head-
ings printed for use in a common school district, and
these headings inadvertently had not been changed; that
the blank forms of warrants, enumeration lists and esti-
mates supplied for use were of a similar character and
suffered from like infirmity. For example, in the en-
umeration lists and in blanks for estimates there would
be blanks for the township and range and number of
district. Sometimes these had been filled. That the
words "District Clerk" would be printed on such
blank; that the secretary or clerk of the school board
of the Hurdland district would sign his name over that
printed designation without erasing or altering it; that
the county clerk in spreading the taxes levied under the
orders of the county court also used tax books with
columns headed by the letter "T." and the letters "S.
D.," the "T." standing for township, and, we suppose,
the "S. D." standing for school district; and after de-
scribing the property to be taxed, and spreading the
tax, the foregoing columns would be filled by figures
"15" under "T.," and the figure "2" under "S. D."
Much of the mischief crept in by the use of the inappro-
priate blanks in papers and books without intelligent
and discriminating alteration of these blanks to suit
a village school district. In the treasurers' bonds of
the school district and in some of the oaths of the school
directors there are plain indications of a crude attempt
to recognize the fact that the district has a new cor-
porate name and entity.

(d) It was shown, too, by defendants by unques-
tioned testimony that the village school district had
for several years had a going organization. The forms
of procedure in personnel of officers and method of
business substantially as directed by the Village Act,
were complied with. For instance, the board had a
secretary, six directors, held elections, appointed

judges of election, ran the only public school in the district, hired teachers, paid them, had their own treasurer, who drew the district's money from the county treasurer and the collector, who paid out this money on warrants drawn by the board, and made his settlements with the board and with the county clerk. In fine, it was established that the district was recognized as a village school district by the public and the county and state officers in drawing and using school money, voting and making estimates and in subserving school purposes by running a graded school with several teachers.

(e)   Coming down to the taxes in dispute for 1905 and 1906, the record shows the following condition of things: The need of a new school house was recognized on all sides. Plaintiffs and the "Forty" were bent on one to cost not more than $3,500. The board of directors and the controlling vote of the district desired one to cost $5,700. In this condition of things, bonds were voted in the latter amount. They were sold at a premium and the schoolhouse was built at once and is now in use. At the proper time in May, 1905, there was filed with the county clerk of Knox county the following estimate, based on the order of the board; said estimate being certified by one Cockrum, then secretary, but after his signature were the printed words, "District Clerk:"

"ESTIMATE.   To the County Clerk, Knox county, Mo.   Dear Sir: We herein submit estimate of the amount of funds necessary to sustain the public school, amount of cash on hand, and an approximate rate to be levied on the taxable property in the School District of the Town of Hurdland, in Knox county, Mo., for a period of seven months, for the year beginning July 1st, 1905:

For Teachers Funds, Sections 9750, 9771
    9777, 9779 and 9844 .... .......... $660.00
For Incidental Fund, Sections 9750, 9771,
    9777, 9779 and 9844................ 280.00
For Building Fund....................
For Sinking Fund, Section 9757........ 350.00
For Annual Interest, Section 9758...... 285.00

Total amount necessary to sustain school $940.00
Deduct estimated amount of cash on hand
    July 1st, 1905.................... 200.00
Deduct estimated amount from Public
    Fund ...... ...... ...............
Amount to be levied on taxable property
    of the District....................

"We estimate that a levy of forty cents on the $100 valuation will be sufficient to raise the above amount. For instructions see back of estimate.

"I hereby certify that at the annual meeting on the first Tuesday in April, 1905, —— months school was ordered, and that the several amounts above specified was voted to sustain the same, as follows:

"1st. That a majority vote of those who are taxpayers was cast to increase the levy for school purposes to — cents on the $100 valuation; provided so much is needed to raise the above amounts for teachers' and incidental funds, as provided Section 9777.

"2nd. That a vote was taken for building purposes at a special election held May 13, 1905, and two-thirds of the qualified voters of the district voting at the election voted in favor of issuing bonds to the amount of $5,700.

"3rd. That, by order of the board a levy of 25 cents on the $100 valuation was authorized to raise the above amount for sinking fund to meet the legal bonded indebtedness, and 25 cents on the $100 valuation to pay

accrued interest on the same, as provided for in Sections 9757 and 9758.

"Done by order of the Board this 15th day of May, 1905.

"G. L. COCKRUM,<br>"District Clerk."

On that estimate plaintiffs' school taxes of 1905 were levied (to-wit, 40 cents on the $100 to run the school, 25 cents on the $100 to create a sinking fund, and 25 cents on the $100 to pay annual interest) spread on the tax books and remain entirely unpaid.

For the year 1906 the following estimate was similarly made and filed:

"ESTIMATE. To the County Clerk, Knox county, Mo. Dear Sir: We herein submit estimate of the amount of funds necessary to sustain the public school, amount of cash on hand, and an approximate rate to be levied on the taxable property in District Town of Hurdland Township No. —, Range No. —, for a period of seven months for the year beginning July 1st, 1906.

| | | | |
|---|---|---|---:|
| For Teachers' Fund (Omitting Sections) | | | $840.00 |
| For Incidental Fund | " | " .... | 250.00 |
| For Building Fund | " | " .... | 000.00 |
| For Sinking Fund | " | " .... | 343.75 |
| For Annual Interest | " | " .... | 285.00 |

Total amount necessary to sustain school
..... ...... ...... ...... ......$1,718.75
Deduct estimated amount of cash on hand
July 1st, 1906..................... 261.00
Deduct estimate amount from Public
Funds ....,........ ............ 24.57

Amount to be levied on the taxable property of the district ...............$1,433.18

"We estimate that a levy of ninety cents on the $100 valuation will be sufficient to raise the above amount. For instructions see back of estimate.

"I hereby certify that at the annual meeting on the first Tuesday in April, 1906, a seven months' school was ordered, and that the several amounts above specified were voted to sustain the same, as follows:

"1st. That a majority vote of those who are tax-payers was cast to increase the levy for school purposes to forty cents on the $100 valuation, provided so much is needed to raise the above amount for teachers' and incidental funds, as provided in Section 9777.

"2nd. That a separate vote was taken for building purposes and two-thirds of the qualified voters of the district voting at the election voted in favor of a levy of fifty cents on the $100 valuation to raise the above amount as provided in Section 9778.

"3rd. That by order of the board a levy of twenty-five cents on the $100 valuation was authorized to raise the above amount for sinking fund to meet the legal bonded indebtedness and twenty-five cents on the $100 valuation to pay accrued interest on the same as provided for in Section 9757 and 9758.

"Done by order of the board this 12th day of May, 1906.

"G. L. COCKRUM,
"District Clerk."

And plaintiffs' school taxes for 1906 on this estimate were levied, spread of record, certified and remained unpaid, the items of tax being divided as for the year 1905.

The chancellor entered the following decree:

"The court declares the law to be that the judgment rendered by the circuit court of Knox county, in *quo warranto* proceedings pleaded in the answer of the defendant, the School District of the Town of Hurdland, is not *res judicata* to any of the matters at issue

in this cause; that the plaintiffs are not estopped to prosecute this action; that the 'temporary order of injunction,' issued by the judge of said circuit court and pleaded in the petition herein, does not entitle the plaintiffs to any relief in this action.

"The court finds from the evidence in the cause that in the year 1902 the defendant, the School District of the Town of Hurdland, became, ever since has been and now is, a body corporate *de facto,* bearing the name and known as the School District of the Town of Hurdland, and possessing the same corporate powers as other village school districts incorporated as such under the laws of this State; that on the 15th day of May, 1905, the Board of Directors of said last-named defendant, forwarded to and filed with the county clerk of said Knox county, its estimates certified by G. L. Cockrum, its then secretary; said estimates being in words and figures as follows, to-wit:" [Said estimate is hereinbefore set out.]

"On the filing leaf on the back of said estimate appears the following, to-wit:

" 'Estimate of District No. Hurdland, Township 15, Range 13, for the year beginning on the first day of July, 1905, G. L. Cockrum, Clerk, Post Office, Hurdland, Mo. Filed May 15th, 1905. F. M. Miller, County Clerk.'

"That thereafter and within the time prescribed by law Frank Miller, who was then and now is the county clerk of said county of Knox, did make out and extend a levy of ninety cents on the one hundred dollars valuation, and assesses the amount so returned on the tax book of said county for the year 1905.

"That prior to said estimate said school district had duly and legally authorized and directed the issuing by said district of its bonds aggregating $5,700; but at the date of said estimate no loan had been effected by said district, nor had its bonds been negoti-

ated, and there was then no $5,700 loan indebtedness
nor bonded indebtedness of said district; that the loan
was not effected when the vote authorizing it was ta-
ken, but when the board, as was afterwards done by it
in the year 1905, had negotiated the bonds. That the
including of said $350 item in said estimate was with-
out any authority therefor, and is of no effect in law.

"The board having in its said estimate certified
that a levy of 40 cents on the $100 valuation was suffi-
cient to raise the amount to be levied on taxable prop-
erty of the district, which amount included said im-
proper item, the county clerk had no authority to go
beyond the estimate of the board although it may have
inadvertently certified an insufficient levy.

"The court further finds from the evidence that on
the 12th day of May, 1906, the said board of directors
forwarded to and filed with said county clerk its esti-
mate duly certified by G. L. Cockrum, its then secre-
tary, and in words and figures as follows, to-wit:"
[Said estimate is hereinbefore set out.]

"That thereafter, the defendants Mitchell and Mc-
Cauley, as judges of the county court of said Knox
county, at its May term, 1906, and on the 11th day of
May, 1906, as appears in the record of said court, made
the following order to-wit:

" 'The county clerk is directed to levy for district
school taxes the rates so certified by the clerk of the
various school districts in this county.'

"That prior to the issuing of the temporary in-
junction in this cause said 1906 school taxes had been
by said clerk regularly and duly extended on the tax
book in a separate column and under the general head-
ing, 'School Tax,' followed thereunder in the same col-
umn by the figures, '5-2.'

"Other facts pertinent to the determination of this
cause stand admitted by the pleadings.

"It is therefore, ordered, adjudged and decreed by

the court that said temporary injunction, in so far as it enjoins 'Henry Early, his deputies and successors in office, from levying upon any of the property of the plaintiffs, and selling the same or any part thereof to pay any taxes now spread upon the tax books of Knox county, Missouri, for the year 1905, in favor of the School District of the Town of Hurdland against the property of plaintiffs, to bring any suits or to proceed in any manner at law to collect the same,' be, and the same is hereby made perpetual, and that in all other respects said temporary injunction be and the same is hereby dissolved. It is further ordered, adjudged and decreed by the court that said school tax of 1905, as attempted to be levied by said defendant School District of the Town of Hurdland, as aforesaid, and as ordered extended by said county court as aforesaid, and as extended by said county clerk as aforesaid, and as attempted to be collected, by the defendant collector, was and is illegal; and the said respective acts and proceedings of the defendants in attempting to estimate, levy, order, extend and collect the same were without any authority in law.

"That the defendant School District of the Town of Hurdland be and the same is hereby perpetually enjoined and restrained from collecting or enforcing or attempting to collect or enforce said school tax for the year beginning July 1, 1905, as levied by said school district as aforesaid; and the defendant Henry Early, as collector of Knox county, Missouri, and his deputies and his successors in office, be and they are hereby perpetually restrained and enjoined from levying upon, holding under levy or selling any of the property of the plaintiffs, to pay said illegal school tax for the year beginning July 1, 1905, and from bringing any suits or proceedings in any manner at law to collect the same; and the said estimate of said school tax for the year beginning July 1, 1905, and the said extension of the

same on the tax book of said county as aforesaid are
hereby set aside and for naught held; that the plain-
tiffs have not shown themselves entitled to any relief
by injunction as against said school taxes for the year
beginning July 1, 1906, and their application for such
relief is hereby denied, and it is further ordered by
the court that one-half of the costs of this suit be and
the same are hereby taxed and adjudged against the
plaintiffs, John H. Black, William H. Buhl and Wil-
liam Delaney; and that one-half of said costs be and
the same are hereby taxed and adjudged against the
defendants.''

On this record defendants contend that the injunc-
tion should have been dissolved and the bill dismissed
as without equity; and plaintiffs contend that the in-
junction should have been made perpetual as to the
school taxes for the year 1906, as well as those of the
year 1905.

I.  The main insistence of defendants is that in
a suit to collect, or enjoin the collection, of school taxes
the corporate existence of the school district itself
cannot be inquired into; and that when the invalidity
of the tax is alone predicated of an alleged invalid or-
ganization of a school district (as we hold to be the
case here) that has been exercising the functions of
one and conducting a school, the case is without equity.

In disposing of this insistence it may be well to
state at the threshold that we are not called upon to
now decide whether the School District of the Town of
Hurdland exists as a body corporate *de jure,* as distin-
guished from one *de facto;* and this is so because, for
the purposes of this case, we conceive the law to be that
a *de facto* body corporate, acting under color of law
and legal right in conducting a public school for sev-
eral years, is as free from collateral assaults on its
corporate life as one *de jure.*

At an early day (in 1852) it was held in Kayser v.

Trustees of Bremen, 16 Mo. 88, that if a going corporation be without legal existence it must be dissolved, if at all, by *quo warranto*. That case was an injunction suit to restrain the collection of taxes imposed by the town. It was sought to be shown that the town of Bremen had no legal existence. After holding that the conceded facts gave the county court jurisdiction of the subject-matter of the incorporation of the town, Judge Scott said: "The validity of its existence can only be contested by a proceeding in *quo warranto*. It cannot be shown, in defense to a suit of a corporation, that the charter was obtained by fraud; neither can it be shown that the charter has been forfeited by misuser or nonuser. Advantage can only be taken of such forfeiture by process on behalf of the State, instituted directly against the corporation, for the purpose of avoiding its charter, and individuals cannot avail themselves of it in collateral suits, until it be judicially declared."

The Kayser case has been followed in a long line of cases from that day substantially to this, and if any cases be found in our reports that strike or seem to strike a discordant note, they have in turn not been followed. For example:

City of St. Louis v. Shields, 62 Mo. 247, was a suit on the bond of certain contractors, Lyman and Stilwell, who bound themselves to fill up a certain slough that had been declared a public nuisance. Defendants demurred to the petition on the ground that plaintiff had no legal capacity to sue, because the act of the General Assembly under which plaintiff claimed to exist violated the Constitution of the State. The demurrer was sustained and plaintiff appealed. WAGNER, J., in disposing of the case, said: "Judge Cooley says, that in a proceeding where the question whether a corporation exists or not arises collaterally, the courts will not permit its corporate character

to be questioned. If it appear to be acting under color of law, and recognized by the State as such, such a question should be raised by the State itself by *quo warranto* or other direct proceeding. And the rule would not be different, if the Constitution itself prescribed the manner of incorporation. Even in such a case proof that the corporation was acting as such, under legislative sanction, would be sufficient evidence of right, except as against the State; and private parties could not enter upon any question of regularity. [Cooley's Const. Lim., 254.]''

In Franklin Avenue German Savings Institution v. Board of Education of the Town of Roscoe, 75 Mo. 408, the board of education undertook to avoid the liability of bonds issued on behalf of the school district by alleging and showing the district was not legally organized. SHERWOOD, C. J., in putting aside that defense, said: ''It is quite immaterial, so far as the present action is concerned, what irregularities may have characterized the organization of 'the Special School District for the Town of Roscoe.' In 1870, prior to the issuance of the bonds in suit, a board of directors was elected, qualified and entered upon the discharge of their duties, and since that time their successors have been regularly elected and acted in that official capacity, and been generally recognized as the 'Board of Education of the Independent School District of the Town of Roscoe;' and the county court have so recognized them. This being true, such board must be regarded as one *de facto,* whose right to act none but the State is competent to question.''

In Inhabitants of Fredericktown v. Fox, 84 Mo. 59, the defendant was charged with keeping a dramshop and selling intoxicating liquors without having a license. Among the defenses interposed was one that the town had no corporate existence. That de-

fense was disallowed on the authority of the same proposition from Cooley, quoted with approval by WAGNER, J., in City of St. Louis v. Shields, *supra*. It was held, *arguendo*, that to question such corporate existence was a function of government, and that a private person cannot directly or indirectly usurp this function, citing Thornton v. Bank, 71 Mo. 221; Shewalter v. Pirner, 55 Mo. 218; Land v. Coffman, 50 Mo. 243.

In State v. Fuller, 96 Mo. 165, defendant appealed from a conviction for an assault to kill one Howard, deputy marshal of Ash Grove, a city of the fourth class. The assault was made in defying the authority of Howard, as such marshal, to make the arrest. It was contended that the town of Ash Grove was not legally incorporated; therefore, Howard was not an officer at all. In answer to that contention, BLACK, J., for this court said: "The city is acting as a city of the fourth class, under color of law, and its right to do so is not questioned by the State. On the contrary, the State recognizes its right to be and to exercise the powers of a city of the fourth class; and its corporate capacity, as such city, cannot be questioned in this collateral proceeding."

In Flynn v. City of Neosho, 114 Mo. l. c. 573, the language of the Court of Appeals in Pierce v. Lutesville, 25 Mo. App. 317, was quoted approvingly, thus: "The reason of the rule which prohibits the fact of the existence of a *de facto* corporation from being contested in a private action of this kind, and which prescribes that it can only be done in a proceeding by *quo warranto* by the State, applies with equal force to municipal as to private corporations; and our Supreme Court, in stating and applying the rule, cites adjudications in respect of both kinds of corporations indifferently."

Burnham v. Rogers, 167 Mo. 17, is a case quite on

all-fours with this.    It was a suit in equity to enjoin
the collection of certain school taxes for 1887, the de-
fendant being township collector.    The petition went
back to the organization of the town of Amoret, de-
nying that it was lawfully organized; then it took up
the Amoret school district, organized in 1892, and
made allegations to the effect that its organization was
not legal.    It then set forth the steps to build a school
house by the Amoret school district and the attempt
to borrow money for that purpose; and alleged the
bonds were void for reasons pointed out.    It then
took up the assessment for 1897 and avers that proper
notice was not given that a proposition to increase
the taxation would be made at the annual meeting,
and that such a proposition was not voted upon.    It
then points out that the board of directors made an
assessment of ninety cents on the $100.    There, as
here, a temporary injunction was awarded.    A de-
murrer was sustained and the case came to this court.
In disposing of the averments of the petition relat-
ing to the illegality in the organization of Amoret and
the Amoret school district, VALLIANT, J., said:    "It
sufficiently appears from the petition that whatever
irregularities may have occurred in the organization
of the town of Amoret and the Amoret school district
these two corporations were organized and are exist-
ing and discharging the functions of such corporations
and have been since 1892.    Their right to exist and
act as such corporations cannot be impeached collat-
erally in the manner attempted in this petition.    Con-
fusion amounting to chaos would result if the life of
every municipal or other public corporation in the
State could be assailed in this manner.''

　　School District No. 35 v. Hodgin, 180 Mo. 70, was
an attempt to condemn land for a schoolhouse site.
The landowner denied the corporate existence of the
school district; and ROBINSON, C. J., speaking for this

court, said: "The right to assail the validity of a corporate creation of the State, or rather a corporation organized under authority of the laws of the State, is not the right of a citizen in a collateral proceeding instituted by such corporation to enforce a right manifestly belonging to corporations of like nature and character, but belongs alone to the State in a direct proceeding by *quo warranto*. It would be a most ruinous proposition of law to announce that any corporation of the State, whether public or private, can be required, every time it attempts to assert a right in the courts of justice of the State, to prove the regularity of every preliminary step taken by its promoters looking to its formation and creation, as a preliminary test of its right to prosecute its actions begun, and if, perchance, the action is one in law, to have this issue so raised, determined by a jury. Under such a rule of practice, a corporation might find itself with or without being, according to the return of the jury, alternating, it may be, between life and death several times during the same day as the return day of the jury in its different cases might indicate. It is neither in the letter nor the spirit of the statute to permit such vexed and befogging issues to be made and considered as those presented in this case under the affidavit filed denying the corporate existence of plaintiff."

Tending to the same effect are State *ex rel.* v. Birch, 186 Mo. 205; Kansas City v. Stegmiller, 151 Mo. l. c. 209; Bank v. Rockefeller, 195 Mo. l. c. 42-51, where many cases are considered, distinguished and applied.

Hence it is that on the facts uncovered below we are persuaded to hold and do hold that the infirmities, if any, in the organization of the School District of the Town of Hurdland do not entitle plaintiffs to the relief prayed; and that the corporate existence

of that district cannot be inquired into in this case, but must be left open to be determined in *quo warranto*, and this holding must result in reversing the decree and dismissing plaintiffs' bill, unless that portion of the decree in favor of plaintiffs can be sustained on other grounds, or unless there is something lodged in the case that takes it out of the general rule and doctrine announced in the foregoing cases.

II. Plaintiffs' counsel argue that the case at bar does not come within the general rule above. They argue that the defendant school district voluntarily became a party to the proceeding and tendered the issue of its corporate existence; that having intermeddled and tendered that issue, it ought not now to be heard to claim the benefit of the doctrine announced in the first paragraph of this opinion. It seems the School District of the Town of Hurdland was not an original party to the suit; that it was made a party on its own motion; possibly over the objection of plaintiffs. The precise grounds upon which it sought to interpose do not appear. But it must be self-evident (the bill assailing its corporate existence) that the county collector, county clerk and the county court would not seem at first blush to be the only proper parties to be charged with the duty and shouldered with the burden of collecting the evidence and sustaining the validity of its organization; that in that condition of things it was natural the school district itself would come to the front and take up the cudgels in its own defense. Having taken its position in the forefront of the battle, it now says that its corporate life cannot be assailed by plaintiffs as private citizens in a suit to enjoin its school taxes. That position is well enough. That it sought to be and was made a party is not inconsistent with it; nor can it be said it estopped itself to raise all of its proper defenses by coming forward and submitting itself to the jurisdiction of

the court. The contention of plaintiffs is unsound and, therefore, disallowed.

III. Can that portion of the decree making permanent the injunction against the collection of the taxes of 1905 be sustained on other grounds? We think not.

The decree justifies itself on the theory, as we understand it, that the estimate was bad and the tax levy void because the bonds had not been sold at the immediate time the estimate was filed in the office of the clerk of the county court and at the time the court ordered the clerk to make the levies and spread the taxes. Therefore, there could not be included in such levy items for a sinking fund and for the interest. Other grounds for the decree are stated thus: "The board in its said estimate certified that a levy of forty cents on the $100 valuation was sufficient to raise the amount to be levied on taxable property of the district, which amount included said improper item, the county clerk had no authority to go beyond the estimate of the board, although it may have inadvertently certified an insufficient levy."

Now, turning to the estimate itself it will be seen that, among other items, were these: "For Teachers' fund, $660; for Incidental fund, $280." These two items aggregate $940; and this aggregate item appears in the estimate opposite the words, "Total amount necessary to sustain the school." Then the amount of cash on hand is set forth, and the estimate says this should be deducted. Then this follows: "We estimate that a levy of forty cents on $100 valuation will be sufficient to raise the *above amount*." It is true that in the preceding part of the tabulated statement other items are mentioned, to-wit, an item of $350 for a sinking fund and $285 for annual interest; but we do not construe the phrase, "The above amount," as referring to the last two items. That

phrase occurs in connection with the $940 aggregate item and in connection with the deduction of $200 cash in hand, and evidently refers to the amount necessary to sustain the school itself after deducting cash. This we think becomes plain from internal evidence furnished by the estimate itself, because it proceeds to say that the district had voted bonds to the amount of $5,700 for building purposes, and that the board had ordered a levy of twenty-five cents on $100 valuation for the sinking fund and twenty-five cents on $100 valuation for interest; and the whole document fairly construed by its good sense and four corners ought to be held to mean but one thing, we think, to-wit, that the board wanted forty cents on the $100 valuation levied to sustain the school (i. e., to raise $940), and twenty-five cents levied for a sinking fund and twenty-five cents levied to pay interest, in addition.

So that, even if the interest and sinking fund items were erroneous, there would still be left a forty-cent levy on the $100 as an item of valid tax due to the village district.   There was no tender of payment of this item.   The tender made in the petition does not relate to the village school district at all; and, therefore, in no view of the case do plaintiffs offer to do equity, while seeking equity.

But there is a deeper question in the case, to-wit: were the items of twenty-five cents on the $100 for sinking fund and twenty-five cents on the $100 for interest improper items under the theory entertained by the chancellor, *nisi?*

It seems that at the immediate time this estimate was made, while the bonds had been voted, and possibly issued, they had not been sold.   Shortly thereafter, and long before taxpaying time, they were sold, became an indebtedness and the schoolhouse was built by the proceeds.

The portion of the decree now under consideration,

adjudging the whole of the tax of 1905 void, is based, as said, on the foregoing misconception of the estimate and on the further notion that the bonds had not been actually sold at the time the estimate was made.    The Constitution of this State (sec. 12, art. 10), provides: "That any . . . school district . . . incurring any indebtedness, requiring the assent of the voters as aforesaid, shall, *before or at the time of doing so,* provide for the collection of an annual tax sufficient to pay the interest on such indebtedness as it falls due, and also to constitute a sinking fund for the payment of the principal thereof, within twenty years from the time of contracting the same."

This constitutional provision has been held mandatory and self-enforcing (State *ex rel.* v. Allen, 183 Mo. l. c. 292; Evans v. McFarland, 186 Mo. l. c. 726), and is entitled to full force and effect.    The school estimate had to be put in by May 15th, 1905.    We are not called upon to decide that estimates could be furnished year after year and used as a basis for levying taxes to pay interest on, and creating a sinking fund for, school bonds not sold and, therefore, in no sense an *indebtedness* of the district.    That would be a hard case, indeed, and one quite on the fringe of things.    When such a case arises it can be decided on its own facts, and its decision may be left a question reserved and considered as inapplicable to the case at bar.    But the law must be given a practical and reasonable construction and application.    The Constitution required the school board to provide for a collection of an annual tax for a sinking fund and to pay the interest; it says this must be done at the time of incurring the indebtedness or *before* that time. Here it was done before the bonds were actually sold and delivered.    Doubtless, the State Auditor would require a constitutional showing to be made before registering the bonds.    Doubtless, they could not

be sold without the constitutional requirement having been complied with.    They were at once sold.    The interest began to accrue.    How was it to be paid? By a tax levy deferred until the next year?    That would result in a default in the interest, impair the credit of the district and run counter to the intendment of the Constitution.

The point in judgment in Benton v. Scott, 168 Mo. 378, does not touch the question here considered, and nothing said in that case militates against what is said here.

We hold the finding of the court criticising the form of this estimate is in error.    We hold, further, that the estimate was properly made and the tax properly levied.

Furthermore, plaintiffs were not defending against the tax of 1905 on the grounds assigned by the court for invalidating it.    It is a wise rule of law that the judgment of a court must be responsive to the pleadings; otherwise, the door is opened wide for findings and decrees not based on the pleadings and not within them, thus leading to uncertainty and confusion and permitting cases to pass off on theories not threshed out at the trial and not within the pleadings or the evidence.    The decree of the learned chancellor was, therefore, erroneous on this ground as well. [Roden v. Helm, 192 Mo. l. c. 93-4; Schneider v. Patton, 175 Mo. l. c. 723; Irwin v. Chiles, 28 Mo. l. c. 578; Newham v. Kenton, 79 Mo. l. c. 385; Reed v. Bott, 100 Mo. l. c. 67.    See also, Kilpatrick v. Wiley, 197 Mo. l. c. 162, et seq.]

IV.    Other questions are discussed by counsel, including rulings on the admission and exclusion of testimony; but on due consideration we deem them one and all wide of the merits.

The premises considered, the decree is reversed; and the cause is remanded with directions to the lower

court to dissolve the injunction and dismiss plaintiffs' bill.    It is so ordered.

All concur.