JESSE I. MARCH, Respondent, v. D. V. VANDIVER, Appellant.

### Kansas City Court of Appeals, June 1, 1914

1. **MALICIOUS PROSECUTION: Facts Necessary to be Shown.** In a suit for malicious prosecution the burden is on plaintiff to show affirmatively that defendant instituted the prosecution maliciously and without probable cause.

2. ———: ———: **Demurrer to Evidence.** Where it is claimed that a demurrer to the evidence should have been sustained, the appellate court cannot interfere if there is any substantial evidence to support the verdict. Such demurrer can be considered only from the viewpoint of plaintiff's evidence.

3. ———: ———: ———: **Probable Cause: Jury Question.** Where the facts as to probable cause or the want of it are disputed, the question of probable cause cannot be taken from the jury. In such case it is for the jury to determine the question of probable cause under proper instructions.

4. ———: ———: ———: ———: ———. The prosecution which plaintiff claims was malicious was upon the charge of having embezzled sums collected from various customers to whom plaintiff sold milk as defendant's agent. The crucial question involved in this charge was whether plaintiff acted as defendant's agent or bought the milk of defendant and retailed it for himself. If the latter was the arrangement between them, there could be no embezzlement. Plaintiff began selling milk by the latter method under a written contract with defendant. Defendant claimed that afterward the contract was changed by oral agreement whereby, after a certain date, plaintiff sold as his agent. The alleged embezzlement occurred after this date. Defendant, learning that plaintiff had suddenly and secretly left the State, after collecting and appropriating money collected from milk customers, laid the facts before the prosecutor and told him that the written contract had been orally changed. The prosecutor advised that embezzlement had been committed, and defendant had plaintiff arrested, brought back, and prosecuted. He was acquitted. In

a suit for the prosecution as malicious and also in the criminal case, the question of whether the contract had been changed was in dispute. Whether it had been changed or not was a question clearly within defendant's knowledge. He could not have been misled, as to this, by appearances. If he knew it had not, and yet told the prosecutor it had, then not only was there a lack of probable cause, but, in such case, the institution of the prosecution could be regarded as tending to show malice, since an intentional institution of a prosecution with knowledge that it is without legal justification constitutes malice. There being evidence pro and con on the vital question involved as to a fact, namely, the change in the contract, the jury was the proper and only arbiter thereof, and its finding cannot be disturbed by an appellate court.

5. ———: ———: ———: ———: **Advice of Counsel.** Before advice of counsel can be relied upon as a shield, whether such advice goes to probable cause or only to negative malice, it must be shown that there was, not only a full disclosure of all facts known or easily ascertainable, whether known by defendant to be material or not, but there must be a truthful disclosure thereof.

Appeal from Boone Circuit Court.—*Hon. D. H. Harris,* Judge.

AFFIRMED.

*N. T. Gentry* for appellant.

*Gillespie & Conley* for respondent.

TRIMBLE, J.—This is an action for malicious prosecution. It is founded upon the charge in the petion that defendant maliciously and without probable cause had plaintiff arrested and prosecuted for embezzlement. Plaintiff was acquitted of the crime, and thereupon brought this suit. The jury gave him a verdict of $1 actual and $1 punitive damages. Defendant has appealed alleging, as the sole ground of error, that his demurrer to the evidence should have been sustained.

The charge of embezzlement upon which plaintiff was arrested was based on the claim made by defend-

ant, Vandiver, that plaintiff, March, was defendant's agent to sell milk from defendant's dairy to various customers in Columbia and had collected from such customers various sums belonging to defendant and had converted them to his, plaintiff's, own use, thereby embezzling same. The crucial fact involved in this charge was whether March sold milk for defendant as the latter's agent or whether March bought the milk from defendant at so much per gallon and peddled it out for himself to the customers. If the latter was the arrangement between them there could be no embezzlement. Undoubtedly the work of selling milk began under the latter arrangement as shown by the written contract entered into between them to that effect dated March 21, 1912. Defendant claimed that on the 25th of May, 1912, this written contract was changed by oral agreement whereby, after that date, March was to sell and deliver the milk for defendant as the latter's agent and receive, as pay for so doing, the sum of seven cents per gallon, and that the embezzlement occurred after that date. March denied this and claimed that there had been no change in the contract.

It seems that defendant was operating a farm on which was a dairy and a herd of dairy cows, and that March and he entered into the written contract above mentioned; that from the date of said contract, whether it was orally changed or not, plaintiff delivered milk from said dairy to customers in Columbia down to the evening of June 5, 1912, when plaintiff, without letting defendant know anything about it, had his wife to pack up their furniture and purchase three railroad tickets, and that night, under circumstances showing that plaintiff was trying to keep their departure secret, left for Pratt, Kansas. Before going, plaintiff collected various sums due from customers. He told various persons, who saw the preparations to leave, that his wife was going but he was not, and instead of

boarding a train which made better connections, but which left Columbia in the afternoon, he waited and took a train making poor connection, but which left at nine that night, and boarded the train at a small, unfrequented, outlying, station instead of at the regular station in Columbia where the wife had purchased the tickets. There were other circumstances tending strongly to show that plaintiff desired his departure to be sudden, unexpected and unknown.

The next morning defendant noticing that plaintiff did not appear at the dairy as usual, and knowing that he was owing him for milk under the arrangement governed by the written contract and suspecting that something was wrong, went to Columbia and made inquiries among the customers. There he learned that plaintiff had made collections from numbers of them of whom he had denied making any collections when asked by defendant in reference thereto. Defendant also discovered that plaintiff had left secretly for Pratt, Kansas, the night before. He laid the facts before the prosecuting attorney, but did not tell the prosecuting attorney that March had hitherto borne a good reputation. He told the prosecuting attorney of the written contract and that it had been changed, as hereinbefore stated. Upon the facts given, the prosecuting attorney advised him that the crime of embezzlement had been committed. Defendant thereupon swore out a complaint and paid for and assisted the officers in sending a telegram to Pratt, Kansas, whereby the plaintiff was arrested and held.

Where it is claimed that a demurrer to the evidence should have been sustained, the appellate court cannot interfere if there is any substantial evidence to support the verdict. [Citizens Bank v. Lowder, 141 Mo. App. 607; Hobbs v. Williams, 162 S. W. 335.] In considering such demurrer the appellate court can only do so from the viewpoint of plaintiff's evidence. [Conway v. Metropolitan Street Ry., 161 Mo. App. 84.]

The burden was on plaintiff to show affirmatively that defendant instituted the prosecution maliciously and without probable cause. [Callahan v. Kelso, 170 Mo. App. 338, l. c. 340 and cases cited.] Therefore, in order for defendant's demurrer to be efficacious now, the evidence must fail to establish either malice or want of probable cause. There was some evidence from which an inference of malice could be drawn, and the only ground upon which it can be claimed that the demurrer should have been sustained is that the evidence failed to show a want of probable cause, but, on the contrary, did show probable cause as a matter of law.

The question as to whether the evidence wholly failed to show a want of probable cause in this case comes down to the question whether or not the written contract was orally changed on May 25, as defendant claims it was. If it was not changed, plaintiff could not be guilty of embezzlement no matter how reprehensible his conduct may have been in not paying defendant for the milk he had bought of him.

Whether it was changed or not was a fact clearly within defendant's knowledge. As to this fact he could not have been misled by appearances. He laid the facts before the prosecuting attorney and told him the contract had been changed. Now, if this was not a fact, if the contract had not been changed, defendant knew well enough that no crime had been committed, and if he knew this he was clearly without probable cause for the institution of the criminal charge. If, in his own mind he knew that plaintiff merely owed him a debt for milk he had bought of defendant, and that plaintiff had not converted to his own use the proceeds of sales he had made as the agent of defendant, and yet defendant told the prosecuting attorney that plaintiff had done the latter and procured plaintiff's arrest and prosecution, then not only was there a lack of probable cause, but such course

of conduct could be regarded as tending to show malice. If, with knowledge that the contract had not been changed, he nevertheless instituted the prosecution and carried it on, he did so with knowledge that it was without legal justification. This would constitute malice. [Christian v. Hanna, 58 Mo. App. 37; Callahan v. Kelso, 170 Mo. App. 338, l. c. 341.] And it would also show that he was without probable cause. Again, before advice of counsel can be relied upon as a shield in such cases as this, whether it goes to probable cause or only to negative malice, it must be shown that there was not only a *full* disclosure of all facts known or easily ascertainable, whether known by defendant to be material or not, but that there must be a *truthful* disclosure thereof. [Hill v. Palm, 38 Mo. 13; Sappington v. Watson, 50 Mo. 83; Ray v. Goings, 112 Ill. 656; Newell on Malicious Prosecution 311.] So that the question narrows itself down to whether the contract was changed or not. Plaintiff says it was not, and is corroborated in some particulars. Defendant says it was, and his father's testimony tends to corroborate him though the father was unable to say positively that a change was made since he did not hear what was said. Under these circumstances who is the proper arbiter of these and other disputed facts? Clearly the jury is. And the issue over this fact is the all important one, because if this fact is as plaintiff claims it is, there was no crime committed, and the fact being one within defendant's personal knowledge, he was without probable cause and also without legal justification for the prosecution *if the situation was as plaintiff claims it was*. Where the question is disputed as to whether there was a truthful disclosure of all the facts, that question is for the jury to settle. [Carp v. Queen Insurance Co., 203 Mo. 295, l. c. 351.] Where the facts as to probable cause or want of it are disputed, the question of probable cause cannot be taken from the jury. [Stubbs v. Mulholland, 168

Mo. 47, 1. c. 76.] The question of probable cause is composed of law and fact. It is for the jury to say whether the facts are true or not, and for the court to say whether the facts when established amount to probable cause. [Hill v. Palm, 38 Mo. 13, 1. c. 22.] That is to say, "when the facts are undisputed it is the duty of the court to declare their legal effect; when they are disputed, it is for the jury to determine the question under proper instructions." [Carp v. Queen Ins. Co., 203 Mo. 295, 1. c. 351.]

This being so, as the appellate court cannot in this case say there is no substantial evidence to support the jury's finding, it is without authority to disturb the verdict. But, as we understand defendant's claim, his position is that plaintiff's actions and conduct in suddenly and clandestinely leaving without warning and his deception practiced upon defendant and upon those who saw his preparations to leave, so completely contradict his testimony concerning a change in the contract and his reasons for and manner of leaving, as to nullify that evidence and make it amount to no testimony at all. If we were the triers of the facts or were permitted to weigh the testimony we would unhesitatingly say that the contract was changed as defendant says it was, and that not only did he have probable cause to believe plaintiff embezzled the funds after May 25, and hurriedly left town for that reason, but that plaintiff did in fact do these things. But the trouble is the facts are disputed, and, when such is the case, the jury must settle the issue, and they have done so adversely to defendant. The fact that they gave only $1 actual and $1 punitive damages does not, of itself alone, show that there was no evidence in support of plaintiff's case. Many circumstances may have entered into the matter leading the jury to inflict only the lighest punishment although they believed the facts were such as to disclose a case.

In addition to this, plaintiff gave testimony explaining and negativing some of the suspicious circumstances of his conduct, and the weight to be given this explanation was for the jury. As to the other conduct showing a guilty mind on the part of plaintiff, there was testimony from which the jury could infer that it was referable to the fact that plaintiff wanted to avoid defendant because of his failure to pay for the milk bought and not from a consciousness of having embezzled defendant's money.

For the reasons indicated, we are without authority to disturb the verdict. The judgment is accordingly affirmed. The other judges concur.