GRANDY v. CASEY, *Appellant.*

1. **Deed:** PARTICULAR DESCRIPTION TO PREVAIL OVER GENERAL. Where the owner of a triangular lot conveyed a part of it by a deed describing it as the north half of said lot, to be divided by a line in the middle of the front thereof on a certain street, and back eastwardly parallel with the north line of the lot, the particular description will prevail over the general description, "north half," and his subsequent conveyance of the remainder of the lot as the "south half" will not take the áreal half, but only the residue not included in the particular description in the first deed, and subsequent conveyances of the two parts of said lot as the "north half" and the "south half" will be construed with reference to the conventional meaning given by the particular description to the words "north half" in the first-named deed.

2. **Practice:** EJECTMENT. In ejectment plaintiff has the right to show, by competent evidence, that defendant derived whatever interest he had in the land in controversy from the common source of title. And when plaintiff and defendant claim through a common source of title, it is sufficient for the plaintiff to declare his title from the common source.

*Appeal from Jackson Circuit Court.*—HON. F. M. BLACK, Judge.

AFFIRMED.

*Boggess & Moore* for appellant.

(1) Plaintiff did not show title in himself. (2) Plaintiff did not show that he and defendant claimed under the same common source of title, to-wit, Fry P. McGee. The evidence shows that defendant claims under a Kansas City tax deed, and he who claims under such deed claims under no man. Charter of Kansas City (Acts 1875), secs. 9, 14, 26, 27, 30, 32 ; Blackwell on Tax

Titles, 642, 643, 644, 665; *Bigler v. Karns*, W. & S. 137; *Dee ex dem Glendy v. Devors*, 8 Geo. Rep. 479; *Atkins v. Hinman*, 2 Gilmer, 449. (3) The Hammersloughs only acquired the north half of the lot, by their deeds, in the plainest, simplest, and most common signification of that phrase. *Hopkins v. Paxton*, 4 Dana, 36; *Menkins v. Blumenthal*, 19 Mo. 496; *Ousby v. Jones*, 73 N. Y. 621; *Whittlesey v. Kellogg*, 28 Mo. 404. That which is most material and most certain in a description shall control that which is less material and less certain. *Cutter v. Tufts*, 3 Rich. 272; *Sprague v. Snow*, 4 Rich. 54; *Melvin v. Proprietors*, 5 Mich. 15; *Barnard v. Martin*, 5 N. H. 536; *Rutherford v. Tracy*, 48 Mo. 325; *Morris v. Stewart*, 1 Green (Iowa), 375; *Immegart v. Corgas*, 41 Iowa, 439; *Jennings v. Brizeadine*, 44 Mo. 332–5; *Bigbee v. Coombs*, 64 Mo. 529; *Grumley v. Webb*, 48 Mo. 562; *City v. Laughlin*, 49 Mo. 559; *Butler v. Gale*, 27 Vt. 739. (4) The assessor had the right to pursue the same designations and descriptions which the owners had seen fit to apply to the property. Cooley on Taxation, 279, 286. There is no method of collecting taxes on real estate except from the real estate itself. The proceeding is one essentially *in rem*. *Cooper v. Reynolds*, 10 Wall. 308; *St. Louis v. Russell*, 9 Mo. 507; see City Charter, secs. 63, 64, 65, 66, 68, 70; *Oconto Co. v. Jerard*, 46 Wis. 317; *Edgerton v. Bird*, 6 Wis. 527; *Knox v. Cleveland*, 13 Wis. 245; *Skinner v. Williams*, 85 Mo. 489; *Treville v. Smalls*, 98 U. S. 517.

*Lathrop & Smith* for respondent.

There are no such exceptions saved as will entitle this case to be reviewed in this court upon appeal. No objections were made, or exceptions saved, to the admission of any portion of plaintiff's evidence. No instructions were asked or given. It was proper, upon the facts in this case, for the question of boundary to go to the

jury, or the court sitting as a jury. *Comely v. Stanfield*, 10 Tex. 546 ; *Messer v. Oestreich*, 10 N. W. Rep. 6 ; *O' Mally v. McGinn*, 10 N. W. Rep. 512. Aside from all other questions, Sherwood and McDowell, their heirs and privies, were effectually and firmly bound by the division of the lot as made in the deed from McGee to McDowell, notwithstanding the descriptive words, " south half," in the Sherwood deed, the calls in the McDowell deed must first be satisfied, and after August 10, 1852, everybody was bound to take notice of them. *McGill v. Somers*, 15 Mo. 80 ; *La Cour v. Watson*, 12 La. An. 215 ; *Bryan's Lessee v. Harvey*, 18 Md. 129, 130 ; *Heaton v. Hodges*, 14 Me. 69 ; *Nichols v. Turney*, 15 Conn. 111. The recital in the deed from McGee to McDowell of a parallel line as a boundary estopped McDowell and his privies in blood, estate, and in law, his grantees and alienees from disputing that line. It operated upon the interest acquired, and ran with it into whosesoever hands the property came. It could not, however, estop McDowell and his privies, without estopping McGee and his privies, because the estoppel must be mutual. McGee, therefore, had nothing below said parallel line after his deed to McDowell. McGee's grantees and privies could take no greater interest than he had, and against them the estoppel itself is sufficient to maintain ejectment. 1 Greenl. Evid. (Redf. Ed.) secs. 23, 29, and note ; *Carver v. Jackson*, 4 Pet. 183 ; *Crone v. Morris*, 6 Pet. 611 ; *Hemstead v. Castin*, 33 Mo. 147. Between the expression, " north half," and the additional designation of a parallel line in the McGee-McDowell deed, the designation of the parallel line must govern. Any conflict between the description by parallel line and the expression, " north half," must be reconciled by interpreting "half" as "moiety." Washburn on Real Prop. (3 Ed.) 384 ; *Kronenberger v. Haffner*, 44 Mo. 192 ; *Campbell v. Johnson*, 44 Mo. 250 ; *Evans v. Temple*, 35 Mo. 498 ; *Marshall v. Bonapart*,

18 Mo. 87; *Nelson v. Brodhack*, 44 Mo. 603; *Large v. Penn*, 6 Serg. & R. 488; *Jackson v. McConnell*, 19 Wend. 176; *Nichols v. Turney*, 15 Conn. 109. Defendant's title is derivative. He purchased at tax sale and is confined to the estate of the delinquent taxpayer, Sherwood. Amended Charter of Kansas City, art. 6, sec. 25; *Willard v. Strong*, 14 Vt. 534; *Sheafe v. Wait*, 30 Vt. 737. The three years limitation cited by defendant concerning tax deeds applies only where the land was subject to taxation in the manner in which taxed, and payment not made and no redemption had. That is not this case.

BRACE, J.—This is an action of ejectment for the recovery of a triangular piece of ground in lot 298, in block 32, in Kansas City, represented by the triangle, ACD, on the following plat, which is a correct representation of said lot and block:

The petition is in the usual form, the answer a general denial; the case was tried before the court without a jury; no declarations of law were given, and judgment went for the plaintiff, from which defendant appeals.

The only question before us is, whether the evidence supports the finding and judgment. The facts were undisputed. On the first day of April, 1852, Fry P. McGee and wife, by deed of that date, recorded August 10, 1852, in book T, at page 128, conveyed to John McDowell, "the north half of lot No. two hundred and ninety-eight (298) in the town of Kansas, Jackson county, Missouri; said lot is to be divided in the middle of the front of said lot on Market street, and back eastwardly parallel with the north line of said lot," represented on the plat by the triangle, EBC. BC is the north line and EB is the front line of said lot on Market street, now Grand avenue. The point A is the middle of said line; the line AD is a line run back eastwardly from the said middle of the front of said lot on Market street parallel with the line BC, the north line of said lot: consequently, this deed conveyed to John McDowell the piece of ground represented by the figures ABCD, on the plat.

Afterwards, on the fourteenth day of December, 1853, by his deed of that date, recorded April 5, 1854, the said Fry P. McGee and his wife conveyed to Richard W. Sherwood "the south half of lot two hundred and ninety-eight (298) in block thirty-two in the town of Kansas." As McGee and wife had previously conveyed to McDowell all that part of lot 298 contained within the figure ABCD, this deed conveyed to Sherwood only that part of said lot (EBC) contained within the triangle, ADE, and as the premises in controversy (ACD) is wholly within the figure ABCD, and within the boundaries of McDowell's purchase, McDowell acquired all McGee's title thereto, and Sherwood acquired none to any part of it, by this deed. In 1852, John McDowell died intestate, leaving a widow and several children, all of whom

afterwards conveyed all their right, title, and interest in the north half of lot 298, in block 32, in the town of Kansas, to Julius, Louis, and Edward Hammerslough; and afterwards, on the thirteenth of April, 1881, the said Hammersloughs and their wives, by their deed of that date, recorded March 2, 1881, conveyed "the north half of lot two hundred and ninety-eight (298) in block thirty-two (32) in old town, now City of Kansas, being the same property conveyed by Fry P. McGee and wife to John McDowell by deed, dated April 1, 1852, and recorded in book T, at page 128," to the plaintiff in this suit. In the several deeds of six of the eight children and heirs-at-law of John McDowell, they conveyed, in addition to said north half of said lot, all their interest in and to the estate of their deceased father, to the Hammersloughs; and in the deed to two of the interests the description of the property conveyed was simply the north half of lot two hundred and ninety-eight; and it is contended that the Hammersloughs, as to those two interests, by their deed, acquired only their title to the areal half of said lot, being that part of it contained within the lines ABC.

There is nothing in this contention. The deed of their ancestor contained two descriptions of said lot, a general and a particular one; the general one was the north half, the particular description was practically one by metes and bounds, which showed that the north half, as used in the deed, was not the areal half, but a half to be measured by the front line of said lot on Market street, which was to be divided in the middle, and from the middle point, a line running eastwardly, parallel with the north line, should be the south boundary of said north half; this conventional meaning of the words, "north half," was apparent on the face of their ancestor's deed; it was the meaning which he and his grantor had given to those words in the muniment of title under which they claimed, and which they could not look upon and

fail to read aright, and when they make a deed of the property by the same general description contained in the deed of their ancestor, it must be held that they intended to convey, and did convey, the same land which he and they acquired by that general description. It is as though their ancestor had acquired an estate called Blackacre, described by certain metes and bounds, and they, his heirs, should convey the estate by its general name of Blackacre ; can there be a doubt that the grantee would take all the land included within the metes and bounds of the estate of Blackacre, as limited in the grant to their ancestor? This being so, it follows that the plaintiff, by his deed from the Hammersloughs and the *mesne* conveyances aforesaid, acquired all the title which Fry P. McGee had in and to the premises in controversy at the date of his conveyance to John McDowell.

It was admitted that the north half of lot No. 298 for many years had been assessed by the authorities of Kansas City to the parties from whom plaintiffs claim, and for a like number of years, the south half of said lot had been assessed to Richard W. Sherwood, and that the taxes, when paid by the owners thereof, were paid by those descriptions respectively. The charter of said city (art. VI., sec. 5) makes every owner of real estate in said city liable for municipal taxes; makes it the duty 'of the assessor to keep in his office such maps, plats, and records, as may aid him in the proper assessment of property (sec. ·6); to return a list of all ' real estate assessed in one book (sec. 9); to return on his assessment book in tabular form each parcel of real estate subject to taxation with the description and value thereof in numerical order as to the lots, block, or sec-tions or *subdivisions thereof*, and in a separate column the value attached to each parcel or description. Sec. 14. The charter provides for a board of appeals from the assessment of the assessor, and notice to all taxpayers of

its session (sec. 18) ; and provides for the levy of taxes in accordance with the assessment, makes them due at a certain time, unless otherwise provided by ordinance, and if not paid by a certain time, provides for sale after notice, the execution to the purchasers of a certificate of purchase, and provides (art. VI., sec. 55) that, "real property sold under the provisions of this act, or any interest in such real property, may be redeemed by the owner * * * at any time within two years from the first day on which such real property was advertised for sale, or at any time before the execution and delivery of the tax deed to the purchaser at the tax sale." Laws 1875, 235.

On the sixteenth of November, 1878, Wm. Weston, city collector of the City of Kansas, executed a deed of that date, recorded on the nineteenth of November, 1878, conveying to the defendant, for the taxes for the years 1869 to 1876, inclusive, "the south half of lot two hundred and ninety-eight (298) in block 32, in old town, now City of Kansas ;" and within ten days after the date of said deed, the defendant went into possession, not only of the south half of said lot 298, as deeded by McGee to Sherwood, but into possession of all that part of said lot south of the line AC, on the plat, thus taking possession of the premises in controversy, to which we have seen Sherwood acquired no title, but to which, we have seen plaintiff did acquire title from McGee ; and defendant now claims title to the premises in controversy under said deed from said collector, and in the same breath, says he claims no title from Sherwood, McGee, or any other man. Let us examine this strange proposition. The deeds from McGee to McDowell and Sherwood, in 1852, 1853, divided lot 298 into two subdivisions by the line AD ; these deeds were placed upon the public records ; thereafter that line became the dividing line between the property in said lot of McDowell and Sherwood, and continued so to be between those claim-

ing under each of them. It was the south line of McDowell and those claiming under him, it was the north line of Sherwood, and those claiming under him ; and during all the years from 1869 to 1876, under the deeds from McGee, if he had title, those claiming under McDowell were the owners of that part of said lot north of said line, and Sherwood was the owner of that part south of said line; during those years, taxes were duly levied and assessed separately on these two subdivisions to their respective owners, as the law required.   Charter, art. 6, sec. 14; Laws 1875, p. 222 ; Cooley on Taxation, 400 ; *City of St. Louis v. Provenchere*, 92 Mo. 66.

By that assessment and levy, the city acquired a paramount lien on each of such subdivisions for the amount of tax levied on each ; those claiming under McDowell paid the taxes on their subdivision, and re-deemed it from such lien ; Sherwood failed to pay his taxes, during those years, and his subdivision was sold to satisfy the lien of the city therefor.   During all this time, the title, subject to such lien, remained in Sher-wood just as he received it from McGee, and to just the same land, which did not include the premises in con-troversy ; it continued to so remain for two years after the sale and up to· the very time the deed of the col-lector was delivered to the defendant, and at any time before such delivery Sherwood could have redeemed his land from that lien (art. 6, sec. 55 ; Laws 1875, p. 235), and that same title to that same land would have con-tinued to remain in him, the same as before ; but the collector delivers the deed, *presto change*, the title of Sherwood vanishes into thin air, nevermore to appear again, and a new title descends and vests in the pur-chaser to Sherwood's property.   But this is not even the full measure of the magical effect produced by the delivery of this deed.   The lines of that property trem-ble for a moment in their location fixed by express grant, twenty-five years before, when, look at the plat

again, the north line, AD, of Sherwood's property has disappeared and a new line, AC, appears as the north line of defendant's property, acquired by virtue of said sheriff's deed, including not only the property of Sherwood, sold for his taxes, but the property in controversy, that owed no taxes, was never assessed for Sherwood's taxes, upon which plaintiff's grantors had paid the taxes, and upon which the city had no lien for taxes, either at the time the sale was made or the deed delivered, and this magical result, we are told, is effected by the use by the collector of the words "south half," in the description of the property conveyed, the very words by which Sherwood acquired title from McGee to that part of lot 298, whose northern boundary was the line AD.

The statement of this proposition seems to us its sufficient refutation, and no refinements upon the inherent nature and character of proceedings strictly *in rem*, and seeming analogies between this and such proceedings, can reconcile us to such a wonderful transmutation, especially in view of the fact that the state, by its charter to the city, had so carefully kept in view the title of the owner of the property as to keep it for him and subject to his redemption for two years after the sale, and up to the very moment of the delivery of the collector's deed to the purchaser; and generally, it may be said, that the object of all such proceedings being merely and solely to collect the tax, it was never intended that they should be so construed as to affect the character of the title previously existing among the owners. *Sheafe v. Wait*, 30 Vt. 735. The title acquired by a purchaser at a tax sale under his deed is a derivative title. *Gitchell v. Kreidler*, 84 Mo. 472.

The defendant derived his title from the City of Kansas, the city from Sherwood, Sherwood from McGee, who was the common source of title from which both plaintiff and defendant each derived their title, respectively, to

their respective lots, one of which, the plaintiff's, contained within its boundaries the premises sued for, and as defendant claimed alone under his deed from the city collector, the plaintiff made out a *prima-facie* case when he traced his title to McGee ; in ejectment, plaintiff has the right to show by competent evidence that defendant derived whatever interest he had in the land in question from the common source of title.   *Smith v. Lindsey*, 89 Mo.   76.   "And, when plaintiff and defendant claims through a common source of title it is sufficient for the plaintiff to deduce his title from the common source." *Hardin v. Miller*, 64 Mo. 545 ; *Fellows v. Wise*, 49 Mo. 350.   "As against some unknown person the title of both may be worthless, but as between the parties we have only to enquire which one acquires the title of the common grantor."   *Smith v. Lindsey*, *supra.*

The special statute of limitations contained in the charter for the protection of purchasers of tax titles has no application in this case.   Plaintiff makes no claim to any part of the lot which was conveyed to the defendant by his tax deed, his demand is confined to premises not conveyed by that deed ; as to all of the lot actually conveyed he concedes title in defendant.

Judgment of the circuit court is affirmed.   All concur.