CITY OF SALEM, at the Relation and to the Use of WILLIAM RONEY, Appellant, v. W. W. YOUNG, Respondent.

Springfield Court of Appeals, February 28, 1910.

1. **TAXBILLS: Actions: Parties: Real Owner of Real Estate only Necessary Party Defendant in Tax Suit.** In a suit on a special taxbill to enforce a lien on real estate, where the defendant is the real owner of the land, he is not in a position to complain because the record shows that another has a joint interest with him in the land. The law only requires that the real owner of the land be made a party defendant in a tax suit.

2. ———: ———: ———: **Contribution: All the Owners of Real Estate not Necessary Parties in a Tax Suit.** A valid judgment may be rendered in an action on a special taxbill against real estate to be charged with its lien without bringing in all the parties in interest. Only the interest of the party made defendant would be bound by the judgment; and the defendant actually made a party would have his action against owners not made parties for contribution.

3. ———: ———: **In Suits on Taxbills, only Substantial Compliance with Law Required.** Observance of all the formalities in suits on taxbills is not required, but only a substantial compliance with the law is demanded.

4. **MUNICIPAL CORPORATIONS: Taxbills: Waiver of Notice to Build Sidewalks.** When an owner of real estate in a city of the fourth class was present at the meeting of the board of aldermen at the time of the passage of an ordinance providing for the construction of a sidewalk along his property, and notified the city at the time that he would neither build the walk nor pay for its construction, he waived any additional notice.

5. ———: **Sidewalks: Power of City to Condemn and Construct Sidewalks.** Section 5991, Revised Statutes 1899, gives cities of the fourth class a right to condemn defective sidewalks and provide for the construction of new ones.

6. ———: **Extension of City Limits: Extension not Restricted to Platted Additions.** Section 4932, Revised Statutes, 1879, providing for the extension of city limits, empowers the mayor and board of aldermen, with the consent of a majority of the legal voters of the city voting at an election, to extend the limits of the city over any territory lying adjacent thereto, and such extension is not restricted to platted grounds.

7. ———: ———: **Taxbills: Collateral Attack: Quo Warranto.** The existence of a municipal corporation in ‚the *de facto* exercise of corporate powers must be challenged by the State itself by an information in the nature of *quo warranto* and cannot be collaterally attacked by a defendant in a suit for taxes.

8. ———: ———: ———: **De Facto Corporation.** In a suit against a landowner on a special taxbill issued for the construction of a sidewalk, it is not necessary that the plaintiff show that the extension of the city limits over defendant's property was in compliance with the provisions of the statutes governing such extension. It is sufficient to show that the municipal corporation was *de facto* exercising municipal power over said extension.

9. ———: ———: ———: **Collateral Attack: Reasonableness of Extension.** The reasonableness of an extension of city limits under an ordinance of the municipality may be questioned collaterally in a suit on a special taxbill issued to pay for the construction of a sidewalk. The burden of proving the unreasonableness is upon the defendant; and if there is any doubt, it should be resolved in favor of the ordinance.

10. ———: **Construction of Sidewalks: Taxbills: Reasonableness of Ordinance.** The grounds upon which an ordinance may be declared void for unreasonableness are, first, where it is oppressive, unequal and unjust, and, second, where it is altogether unreasonable. This rule applies with reference to an ordinance providing for the construction of a sidewalk; and, if there is any doubt as to its reasonableness, it should be resolved in favor of the ordinance.

### On Motion for Rehearing.

11. **MUNICIPAL CORPORATIONS: Sidewalks: Power to Require Sidewalks along Unplatted Land: Reasonableness of Ordinance.** Cities of the fourth class are expressly empowered to provide for the construction of sidewalks along unplatted land within the corporate limits. The reasonableness of an ordinance providing for the construction of a sidewalk along an unplatted tract of land may, however, be investigated to determine its validity.

142 App—11

12. ————: Taxation of Unplatted Lands. Cases may arise in which the exercise by the city of its taxing power over tracts of unplatted land situated within the city limits could not be tolerated by the court. Each particular case must be determined by its own particular circumstances without regard to any definite or fixed rule.

Appeal from Dent Circuit Court.—*Hon. Harry Clymer,* Special Judge.

REVERSED AND REMANDED.

*J. D. Gustin, Fred J. Smith* and *Wm. P. Elmer* for appellant.

(1) This action on the taxbill was properly brought against the defendant Young. He was, in fact, the sole owner of the land against which the lien is sought to be enforced. Heman v. McNamara, 77 Mo. App. 1. (2) However, a valid judgment on a special taxbill may be rendered without bringing in all the owners of the property as defendants. Granite Co. v. Taylor, 64 Mo. App. 37; Neenan v. St. Joseph, 126 Mo. 89. (3) It was not necessary that defendant's land should have been platted before being included within an extension of the corporate limits of the city. Plattsburg v. Riley, 42 Mo. App. 18; State ex rel. v. Birch, 186 Mo. 205; Copeland v. St. Joseph, 126 Mo. 417; Burnes ex rel. v. Edgerton, 143 Mo. 563. (4) Any presumption that might arise from the introduction of the incorporating order is evidence only that such state of fact as shown by it to have existed continued to exist as long as is usual with things of that nature. Mer. Co. v. Bretherton (Mont.), 80 Pac. 10; Scott v. Wood, 81 Cal. 398; Martyn v. Curtis, 67 Vt. 263; Greenfield v. Camden, 74 Me. 56; 2 Best on Ev. (Woods' Ed.), sec. 405; 9 Ency. Ev., 906; Haskings v. Railroad, 58 Mo. 302. (5) The records of the city prior to 1892 having been lost, parol testimony was properly introduced to show that the proposition was carried as submitted.

No formality aside from the submission of the proposition and the affirmative vote of a majority of the electors was required to make the extension effective. R. S. 1879, sec. 4932; State ex rel v. Westport, 116 Mo. 582; Parker v. Zeisler, 73 Mo. App. 537. (6) Contractors will not be defeated in cases of this character unless something has been done or omitted injuriously affecting the interests of the defendant. Springfield ex rel. v. Knott, 49 Mo. App. 613; Sheehan v. Owen, 82 Mo. 458; Cole v. Skrainka, 105 Mo. 309. (7) The taxbill made out a *prima facie* case for relators. R. S. 1899, sec. 5986; Kefferstein v. Knox, 56 Mo. 186; Nevada ex rel. v. Morris, 43 Mo. App. 586; Stifel v. Dougherty, 56 Mo. App. 441; Springfield ex rel. v. Tuttle; 56 Mo. App. 537; Heman Const. Co. v. O'Brien, 81 Mo. App. 639. (8) And having made out a *prima facie* case, the relators were entitled to go to the jury. It was error for the court to direct a verdict for the defendant. Gibson v. Zimmerman, 27 Mo. App. 90; Cravens v. Hunter, 87 Mo. App. 456; Ladd v. Williams, 104 Mo. App. 390.

*Gratia E. Woodside* and *Lamar & Arthur* for respondent.

(1) The owners of the property must be made parties to any tax proceedings. 2 R. S. 1899, sec. 9303; Allen v. McCabe, 93 Mo. 144; Brown v. Hartford, 173 Mo. 183. (2) The Acts of 1893 relating to cities of the fourth class require suits to enforce special taxbills to be brought against the record owner at the time the action is brought. Excelsior Springs v. Henry, 99 Mo. App. 450; Vance v. Corrigan, 78 Mo. 94. (3) The right to subject property to real municipal taxation extends only to such land within the city limits as has been surveyed and platted into lots, although under some circumstances the right to general taxation may extend to unplatted land. Langworth v. Dubuque, 16 Ia. 271; Fulton v. Davenport, 17 Ia. 407; Cheaney v. Hooser, 9 Bonn. 330. (4) The charter of a city pro-

viding that the cost of street improvements shall be assessed upon the lots and parcels of land having a frontage upon the improved streets ratable according to the valuation of each, allows assessments only in such parts of the city as have been platted into lots and parcels extending back a uniform distance from the street. Griggs v. Tacoma, 3 Wash. 785, 29 Pac. 449; Howard v. Tacoma, 3 Wash. 711, 29 Pac. 447. (5) A city has no extra-territorial powers, and a municipal corporation's powers cease at the municipal boundaries, and in the absence of express legislative enactment the corporation boundaries mark the limit for the exercise of all powers of a municipality. R. S. 1899, chap. 91, art. 5; St. Louis v. Fisher, 167 Mo. 654; St. Louis v. Howard, 119 Mo. 46; Elkhart v. Lipschitz, 164 Ind. 571; Begein v. Anderson, 28 Ind. 79; Robb v. Indianapolis, 38 Ind. 49; Gas v. Greenville Corp., 4 Sneed 62; St. Louis v. University, 88 Mo. 155; Stealey v. Kansas City, 179 Mo. 407. (6) This presumption protects a city that has failed to specifically state in its ordinance affecting a street, that the same was situate within the city limits, only when there is nothing in the record, or otherwise to show that the location of the street was a matter of controversy. Kansas City v. Block, 175 Mo. 442; Kansas City v. Vineyard, 128 Mo. 75. (7) The powers of a municipality to pass ordinances requiring the construction and repairing of sidewalks are by no means omnipotent. These powers must be exercised within the bounds of reason and apparent necessity; they must not impose a burden without a benefit. An ordinance that is unreasonable is void. Corrigan v. Gage, 68 Mo. 542; Willow Springs v. Withaupt, 61 Mo. App. 275; Lamar v. Weidman, 57 Mo. App. 507; Skinker v. Heman, 148 Mo. 355; McMillan v. Schmitzer, 87 Mo. 402.

STATEMENT.—This was an action commenced by the city of Salem as a municipal corporation organized under the provisions of chapter 91, article 5, of the Revised Statutes of 1899, as a city of the fourth class.

The petition is in substance as follows: On the 7th day of September, 1908, the board of aldermen of the city of Salem passed an ordinance condemning the sidewalk on the east side of Front street and providing for the removal of the same and the construction of a new sidewalk in place thereof, and levying the cost of work, grading and excavating as a special assessment upon the land abutting said improvement. The respondent, as claimed by the city, was the owner of said land and refused to construct the walk as ordained by the city. The street commissioner estimated the cost of the walk at one hundred and twenty-six dollars, and the respondent, having refused to construct the walk, the same was built by the city under a contract with William Roney and Jesse Ward, relators, as contractors. After its construction, a special taxbill was issued in due form in favor of the contractors for the amount due them for constructing the walk. This taxbill, by the provisions of the ordinances of the city, became a lien on the lot abutting said improvement.

To the petition, the respondent answered that he was joint owner with one L. N. Coffman of the lot abutting the improvement, denying that said land was any part of the city of Salem and alleging that the same was not within the corporate limits thereof and not subject to the jurisdiction of the city, and that it had never been laid out and platted; that under the ordinances of the city, he was entitled to notice that such sidewalk had been ordered constructed and that no notice was in fact given him; that the taxbill was vague and indefinite and did not properly describe the land on which it purported to be a lien.

A trial was had before a jury which was by the court peremptorily instructed to return a verdict for the respondent.

As to the ownership of the land, there was evidence showing that the respondent and one L. N. Coffman had entered into an arrangement whereby Coffman was

the owner of the north one-half and respondent was the owner of the south one-half of the lot, and on the strength of this arrangement, Coffman had constructed a sidewalk along the north side of the tract.

The points mainly relied on by respondent are that the land is not within the city, and that he received no such notice as he was entitled to under the ordinances of the city.

Relators introduced in evidence the taxbill and showed the title of respondent and demand for payment. The respondent introduced an order of the county court of Dent county, in which Salem is situated, dated November 8, 1881, incorporating the city of Salem and setting out its metes and bounds within the limits so incorporated—the land of the respondent not being within such limits. He also introduced an ordinance requiring that in case of the condemnation of a sidewalk, a full description should be given of the lots or pieces of ground abutting on the same, and requiring an order to be served on the owner to remove the sidewalk so condemned. Respondent offered evidence to show the condition of the sidewalk condemned, the amount of travel on it and its location with reference to other portions of the city.

At the close of respondent's case, the relators requested a peremptory instruction, which being refused, they offered in evidence a certificate in the ordinance book of 1898 containing an ordinance submitting the proposition to extend the limits of the corporation to the voters at the April election in 1886, which proposed extension included the land of respondent; also evidence showing that the city records prior to the year 1902 were lost or burned and could not be produced; that the proposition to extend the city limits was voted on and carried as submitted at the election in April, 1886. Relators also offered evidence to show that the city had exercised jurisdiction over such territory since that date, policing the same and collecting taxes, and

that the residents of the included territory had voted at city elections and exercised the rights and franchises of citizens of the city. This last offer of evidence was rejected by the court.

NIXON, P. J. (after stating the facts.)—I. The question is raised by the respondent as to the proper parties defendant to the suit on the taxbill. It is contended that one L. N. Coffman was a joint owner with the respondent and should have been made a party defendant in the suit.

The evidence tends to show that prior to the suit on the taxbill, the joint owners, Young and Coffman, made a verbal partition, Young receiving the portion of the land on which the sidewalk in question abuts, and it appears that Coffman constructed his portion of the sidewalk in compliance with the ordinance along the tract belonging to him.

The provision of the statute requiring the tax suit to be commenced against the record owner was made to enable the plaintiff more readily to ascertain the party against whom suit should be commenced. The law in its administration is to be made practical, and if the real owner is in fact made the defendant in the tax suit, the end intended to be accomplished by the law is reached and the defendant is not in a position to complain. A valid judgment may be rendered in an action on a special taxbill against real estate to be charged with its lien without bringing in all the parties in interest. Of course, only the interest of the party made defendant would be bound by the judgment, and the defendant actually made a party would have his action against owners not made parties for contribution. [Schneider Granite Co. v. Taylor, 64 Mo. App. 37.] Observance of all the formalities in suits on taxbills is not required, but only a substantial compliance with the law is demanded. [Sheehan v. Owen, 82 Mo. 458; Cole v. Skrainka, 105 Mo. loc. cit. 309, 16 S. W. 491.]

II. It is contended that the respondent, W. W.

Young, should have been given notice of the condemnation of the defective sidewalk and of the passage of the ordinance of resolution for the construction of a new sidewalk abutting his land.

The evidence shows that respondent was present at the meeting of the board of aldermen at the time the ordinance or resolution was passed, and that he notified the city at that time that he would neither build his walk nor pay for its construction. The object of the law under such circumstances requiring notice is to enable the party interested to build the walk or have it built as well as to allow him to make any objections he may have. The respondent in this case had the notice, and, by his declarations, waived any additional notice. It would be a mockery indeed if the law should allow the defendant, before suit, to notify the city that he would neither build nor pay for the construction of the sidewalk, and then, after the expense of constructing it had been incurred and suit had been commenced against him on the taxbill, to defeat the action because he had not been served with notice. Respondent had a right to waive the notice which he did in this case, and he is not in any position to complain because formal notice was not served upon him. He will not be allowed to blow hot and cold at will.

III.   Objection is made to the regularity of the ordinance condemning the old sidewalk and providing for the construction of the new one abutting respondent's land. Section 5991 of the Revised Statutes of 1899 provides: "In addition to the powers hereinbefore granted, the board of aldermen may, by ordinance or resolution, condemn wooden and defective sidewalks, and may remove walks so condemned, and may provide for the construction of new sidewalks in the place of walks so condemned and removed." This provision concerning cities of the fourth class gave the authorities of the city of Salem full power over the sidewalk in question, and their ordinance in this respect was a full compliance with the law.

IV.   Further objection is made to the validity of the supposed extension of the city limits because it included *unplatted* adjacent territory.    There is no foundation for this objection.    It was not necessary that respondent's land should have been platted before being included within the extension of the city limits of the city of Salem.    Section 4932 of the Revised Statutes of 1879 providing for the extension of city limits empowers the mayor and board of aldermen, with the consent of a majority of the legal voters of the city voting at an election, to extend the limits of the city over any territory lying adjacent thereto.    The attempted extension of the city limits was made under this act, and as will be seen from an inspection of its provisions, such extension is not restricted to platted grounds, and it has been often decided that the limitation of extension of cities of the fourth class is not restricted to platted additions.    [Burnes ex rel. v. City of Edgerton, 143 Mo. 563, 45 S. W. 292; Cole v. Skrainka, *supra*; Copeland v. City of St. Joseph, 126 Mo. 417, 29 S. W. 281; State ex rel. v. Birch, 186 Mo. 205, 85 S. W. 361.]

V.   This case seems to have proceeded in the trial court upon the erroneous theory that it was necessary for the relators to show that the extension of the city limits over the respondent's property was in compliance with the provisions of the statutes governing such extensions.    This is an entirely erroneous conception of the law.    Under the Missouri decisions, a *de facto* corporation or a *de facto* extension of the city limits of a municipal corporation is sufficient to withstand the respondent's objections in an action upon a taxbill. Any actual organization of the municipality in ostensible possession and in the exercise of municipal powers is a *de facto* corporation.    Public policy requires that municipal governments should be stable existing civil institutions and should not be easily destroyed.    This maxim applies in all its force to the extension of city

boundaries as well as to the original incorporation of the city.

Evidence was offered to show that the city of Salem had exercised its corporate functions over a territory attempted to be annexed, for years. The right of municipalities to exist and to act as such corporations cannot be impeached collaterally in the manner attempted in this case. Confusion amounting to chaos would result if the life of every municipality or other public service corporation should hang by so slender a thread. [Black v. Early, 208 Mo. loc. cit. 307, 106 S. W. 1014.] Under a rule that would permit the validity of the public corporation to be brought into question at the suit of private individuals, the corporation might find itself with or without being according to the return of the jury, alternating, it may be, between life and death several times during the same day as the return of the jury in different cases might indicate. It is neither within the letter nor the spirit of the statute to permit such vexatious and befogging issues to be made and considered. [Black v. Early, *supra*.] The existence of a municipal corporation in the *de facto* exercise of corporate powers must be challenged by the State itself by an information in the nature of *quo warranto* and cannot be collaterally attacked, for instance, by a defendant in a suit for taxes. [State ex rel. v. Birch, *supra*, and cases cited therein.]

VI. But the reasonableness of an extension of city limits in suits to enforce rights claimed to arise thereunder is a subject of judicial inquiry. [State ex rel. v. Birch, *supra*.] In case of such attack, however, the presumption would arise that such extension and the exercise of corporate powers was reasonable, and, in cases like the present, the presumption of law is that the street is a proper subject of municipal legislation and the burden of proving the contrary is on the challenger. When such attack is made in a collateral proceeding, as here either on the extension

of city limits or the sidewalk ordinance, the inquiry should be confined to the narrowest limits and keenly scrutinized, and where there is a doubt as to the reasonableness of an ordinance looking towards an extension of city limits, or establishing a contested sidewalk, it should be resolved in favor of the ordinance. [State ex rel. v. Birch, *supra*; City of Plattsburg v. Riley, 42 Mo. App. loc. cit. 23; Kansas City v. Block, 175 Mo. 433, 74 S. W. 993; State ex rel. v. Pond, 93 Mo. 606, 6 S. W. 469.] The grounds upon which an ordinance may be declared void for unreasonableness have been said to be: First. Where it is oppressive, unequal and unjust; and second, when it is altogether unreasonable. [City of Cape Girardeau v. Riley, 72 Mo. 220; Corrigan v. Gage, 68 Mo. 541.]

The rulings of the trial court as to the admission and exclusion of evidence were contrary to the principles of law announced in this opinion, and in order that the question of the reasonableness of the extension of the city limits of the city of Salem and the reasonableness of the ordinance condemning the defective sidewalk and providing for the construction of a new one abutting defendant's land may be investigated according to the principles herein stated, the judgment is reversed and the cause remanded for a new trial on such issues. But in order to raise such issues, respondent's answer should be amended so as to plead his objections specifically. All concur.

## ON MOTION FOR REHEARING.

NIXON, P. J.—A motion has been filed in this case for a rehearing on several grounds, all of which were fully expounded in the opinions heretofore filed in this case, with the exception, perhaps, of the point that is now urged that unplatted land within the territorial limits of a city cannot be made subject to the sidewalk ordinances of the city. Able counsel for re-

Salem ex rel. v. Young.

spondent with great pertinacity press this question on our consideration, and, on account of the questions involved being of public importance—although the question was carefully considered in the opinion delivered in this case—we feel that something more perhaps may be added.

The question as to whether a tract of farm land or a tract of land not platted, situated within the corporate limits of a city, can be made subject to taxation for municipal improvements is simply the interpretation of the law as to whether such power has been expressly or impliedly conferred by the Legislature to the municipality, always subject, of course, to the constitutional limitation of grants to cities. In this case, the question is removed from all doubt by the law expressly empowering cities of the fourth class to open and improve streets, avenues, alleys and other public highways, and to make sidewalks, build bridges, culverts, drains and sewers within the city, and so forth; also giving cities of the fourth class exclusive control over all streets, alleys, avenues and public highways, within the limits of such cities. [Section 5979, Revised Statutes of 1899.] Not only is this general power thus expressly given, but also the further power for making and repairing sidewalks and sidewalk curbing and levying the cost thereof as special assessments on all lots and pieces of ground abutting such improvements in proportion to the front foot thereof. [Section 5981, Revised Statutes of 1899, concerning cities of the fourth class.] It will be noticed that under the latter section, the power is given to levy the special assessments to pay for making and repairing sidewalks, not only on all lots, but also on *all pieces of ground abutting such improvements*. This language leaves no open question. Its meaning is written on its face and so written as to need no interpretation. As we have seen, the statute enumerates lots and pieces of ground. Even if the latter were not specifically

Salem ex rel. v. Young.

enumerated, the word "lot" is sufficiently comprehensive to include tracts or parcels of land; and it was held by the Supreme Court of Minnesota that the word "lot" would include a tract or parcel of land of sixty-five acres abutting on streets of a city on three sides and alleged to be vacant, unoccupied pasture land, was assessable under the statute 'when water pipes and mains had been laid in the streets opposite the same. [Ramsey County v. Lewis Company, 75 N. W. 108.]

To sustain his contention, respondent has further cited the case of Langworthy v. City of Dubuque, 16 Iowa 271, which, an examination will show, is in entire harmony with the principles announced in the opinion delivered in the present case. The lots sought to be taxed in the city of Dubuque in that case were of various sizes—from two to fourteen or more acres of land—and were called mineral lots. It was held that the plaintiff was bound to pay the assessments levied by the city upon his property, the court remarking: "We are not insensible that abuses and inequalities will often occur in levying these, city burdens, resulting especially from an enlargement of their boundaries; but these in the main should find their correction in a wiser and more discreet administration of the city government, the authorities of which should have their assessments made with the utmost care and discretion, and always with a special regard to the value and location of the property, and the proportional benefits which the same will be likely to receive from disbursements of the local revenue collected." To hold that a tract of land in the very heart of a city which receives all the benefits of the unearned increment arising from the growth of population and wealth and at the same time to relieve it of all burdens of taxation for city government would be obnoxious to every principle of justice.

We are further cited, in support of the motion for

rehearing, to the case of Fulton v. City of Davenport, 17 Iowa 404, in which, speaking of the circumstances upon which a corporation may tax property situated in new extensions to the city, the following language is used: ". . . in all such cases, the power to tax clearly arises, and may be exercised whether the proprietor has dedicated and changed his land into corporate property or not, by laying it off into town lots. And this, too, upon the plain principles of justice and the exigencies of the case. We say, upon the principles of justice, because he gets the same equivalent in kind and character that other citizens do for the taxes they pay, and who otherwise would be taxed for his benefit. It would be indeed somewhat anomalous, and certainly against the genius and progress of the age, not to say those principles of equality and fair play, which should and do in a reasonable degree, as we think, mark the character of our different grades or systems of polity in this country, to allow one man because of his superior wealth and ability to do so, to occupy a princely estate, embracing, it may be, a hundred or more acres of land, in the heart of one of our cities, enjoy all the varied benefits and privileges afforded by the local government, and share none of its burdens."

Of course, cases may arise in which the exercise by the city of its taxing power over tracts of unplatted land situated within the city limits could not be tolerated by the court. Each particular case must be determined by its own particular circumstances without regard to any definite or fixed rule. The principles laid down by the authorities cited in the opinion rendered in this case place the decision upon the reasonableness of the exercise of the power of taxation, taking into consideration all the facts and circumstances surrounding the particular case. The motion for rehearing is denied. All concur.