ALGONQUIN GOLF CLUB, A CORPORATION, WILLIAM S. DROZDA REALTY CO., ROBERT LEE MORTON, H. W. RICH, LLOYD L. CROUCH, L. E. FRAILEY, CALVIN H. BOWERSOX, GEORGE W. JOHNS, HUBERT K. JACKSON, CHARLES M. AVERY, JR., J. J. SCHILLINGTON, E. H. SHUTT AND R. S. GRABLE (PLAINTIFFS), APPELLANTS, V. CITY OF GLENDALE, A CORPORATION (DEFENDANT), RESPONDENT.—81 S. W. (2d) 354.

St. Louis Court of Appeals. Opinion filed April 2, 1935, as modified April 18, 1935.

*Green, Henry & Remmers* and *Cobbs & Logan* for appellants.

952

*Vernon L. Turner* for respondent.

HOSTETTER, P. J.—This is a suit in equity instituted by plaintiffs, Algonquin Golf Club, a corporation, and others, against the city of Glendale, in the Circuit Court of the County of St. Louis on the 19th day of December, 1932, the general object and nature of which is to have annexation ordinances, Nos. 340 and 345, of the city of Glendale held to be void and of no effect and to enjoin said city from putting the same into effect or from levying, assessing or collecting municipal taxes on the annexed territory.

The pertinent allegations of the petition are as follows:

That the Algonquin Golf Club is a Missouri corporation and that the purpose of its existence is the maintenance of a club for social and recreational purposes; that it owns a tract of land in St. Louis County, aggregating ninety-three acres; that it maintains a clubhouse and swimming pool with an assessed valuation of $5600; that of the ninety-three acres of land owned by the club, thirty-seven acres are comprised within the annexed territory hereafter mentioned, having an assessed valuation of $50,000; that plaintiff, William S. Drozda Realty Company, owns approximately twenty-one acres; that plaintiff, Robert Lee Morton, resides on a tract containing five and fifty-nine hundredths acres, assessed at $4712 with improvements assessed at $5000; that the other plaintiffs reside on lots varying from one-fourth of an acre to two acres; that the suit is brought for the benefit of plaintiffs and all other residents of the said annexed territory; that defendant is a city of the fourth class located in St. Louis County, Missouri; that on October 5, 1932, defendant passed Ordinance No. 340 providing for the extension of its city limits and calling for an election to vote upon such proposed extension, which election was held on October 29, 1932; that such extension was approved by the resident voters by 200 for and ninety-nine against; that by Ordinance No. 345, approved October 29, 1932, the result of said election was declared and the limits of the defendant city extended in accord therewith and that by such extension the property of the plaintiffs was, and is, included in such extended limits; that prior to such extension the eastern limits of defendant city was a straight line consisting of the west line of Berry Road from Lockwood Avenue to Manchester Road; that the territory sought to be

annexed by said ordinances consisted of approximately one hundred and ten acres, described as follows:

''Beginning at a point in a line five feet east of and parallel with the west line of Berry Road, 100 feet south of the south line of the St. Louis Public Service Company Right of Way, Manchester-Kirkwood Division; thence eastwardly across Berry Road to a point in the east line of said road; thence northwardly along the east line of Berry Road to the north line of Algonquin Lane; thence eastwardly along the north line of Algonquin Lane to the west limits line of the City of Webster Groves; thence northwardly along said western city limits line to the northwest corner of the city limits of the City of Webster Groves at the south line of Bismark Avenue; thence continuing northwardly across Bismark Avenue to the west line of Block 1 of Rock Hill Subdivision and thence northwardly along said line to the southern town limits line of the Village of Rock Hill; thence westwardly along the southern town limits line of the Village of Rock Hill to the east line of Berry Road; thence northwardly along the east line of Berry Road to the south line of Manchester Road and thence along Manchester Road across Berry Road to a point in a line five feet east of the west line thereof and thence southwardly along said line to the point of beginning.''

That the population of Glendale along its eastern border has shown little increase in recent years and at the time of the passage of said ordinance there was a large amount of vacant land within its limits; that only a small portion of land in the annexed portion has been platted or held for sale as town lots; that the platted portion consists of approximately eleven acres or ten per cent of the entire annexed territory; that the annexed portion does not furnish the abode for a densely settled population or represent the actual growth of Glendale beyond its former legal boundary, but is used for the most part for country homes, agricultural purposes, and, in the case of the Algonquin Golf Club, for purposes of recreation; that defendant does not furnish any of the territory in question with water, gas, electric lights or sewerage facilities; that none of the annexed real estate is needed for proper municipal purposes or for the extension of its sewers, gas, or water systems or to supply additional places of abode or for business of the defendant's residents, or for extension of needed police protection; that none of said real estate is valuable by reason of its adaptability for prospective town uses. but whatever value it has is largely for country homes for those desiring to live in a rural district; that it possesses more value because of its proximity to the city of Webster Groves than for its proximity to defendant city; that the value of its lands has been decreased rather than increased by reason of such annexation; that the annexed area and those residing therein do not require police protection of de-

fendant; that none of the annexed territory is held for sale by its owners as town property; that the chief purpose of the extension is to provide additional revenue for defendant without corresponding benefits to plaintiffs; that the children in the annexed territory are attending the public schools of Webster Groves, the said territory being located withing the Webster Groves school district; that the school facilities of Glendale are not so adequate as those of Webster Groves and that the annexation will prove to be detrimental to the educational welfare of said children; that many of the residents of Glendale voted in favor of the annexation upon representations made by officials of defendant city that the annexation would produce additional revenue to enable the city to reduce taxes of those residing in the former territory of defendant; that the purpose of the annexation was not to increase the governmental functions of defendant, but to decrease the cost of same at the expense of plaintiffs and others so annexed; that none of the residents of the annexed territory desire to be added to defendant city; that the result of such annexation will be to subject the land and the residents of the annexed area to municipal burdens without any corresponding benefit to them; that the larger portion of said annexed territory is vacant land, some of which is used for agricultural purposes, a large portion of which is used for country homes and in connection with the golf links of Algonquin Golf Club; that said club will be subjected to larger taxes, expenses of street improvements, compulsory sidewalks, license fees, etc., with no corresponding benefit either to the club or its members or any other property or resident within the annexed area; that defendant is about to, and will, assess taxes against the real and personal property of plaintiffs, included in the annexed territory, and will proceed to exercise general municipal authority over the annexed territory unless enjoined; that the extension of said city works a fraud upon the rights of plaintiffs and on the landowners in the annexed territory and that said ordinance is unreasonable, unjust, oppressive and therefore void; that plaintiffs have no adequate remedy at law.

Defendant's answer is, in substance, as follows:

That it admits that it is a municipal corporation incorporated as a city of the fourth class and that on October 5, 1932, it passed the ordinance mentioned in the petition, providing for the extension of its city limits as described therein; that thereafter on October 29, 1932, the special election was held and the proposition of extending the limits of the city was approved by the voters and that the limits of Glendale were extended by ordinance, in accordance with the election, and proclamation thereof made by the mayor; that it denied generally each and every allegation of the petition; that the territory annexed was properly and reasonably annexed because of

the fire and police protection needed by such annexed territory; that the annexed territory is approximately 5400 feet in length by 600 to 1100 feet in depth, laying along the eastern boundary of defendant city for a distance of 5400 feet; that defendant has a fire department and fire plugs extending along Berry Road, which, except a five foot strip along the western side thereof, lays in the annexed territory; that all of such annexed territory is protected by plugs laying along Berry Road and fires in said territory can be, and are, answered by defendant's fire department and said territory is protected by the plugs already installed; that both prior and since annexation the defendant has received urgent calls from people living within the said annexed territory to prevent and extinguish fires, which have been answered, and the property therein protected; that by reason of the fire protection as existing and proper extension thereof, fire insurance rates on property in said annexed territory will be reduced in cost; that the rate for water service will be reduced because of defendant's contract with the water company providing for fire plugs; that Berry Road is now lighted under the municipal contract with the light company and has been for a number of years, and that said street lights add to the safety and convenience of plaintiffs and other residents of the annexed territory in that said highway is the main traveled highway of said annexed territory; that Berry Road is fronted on by a great number of houses within defendant city and the proper protection of its citizens and of the surrounding territory made it necessary to increase the limits of the city to include said street so that the city would have authority to police same; that some of the plaintiffs were parties to a petition filed in the county court a short time prior to the annexation by defendant, praying the county court to incorporate a part of said territory as a separate municipality for a police, said plaintiffs well knowing that said territory should have police protection and other protections and conveniences connected with incorporation; that all of the annexed territory is completely surrounded by other incorporated areas, to-wit: Webster Groves on the south and east, Rock Hill on the north, and Glendale on the west; that inasmuch as said annexed territory has in the past been benefited and, in the future will be benefited, by the police, lighting and fire protection service furnished by defendant, it is fitting and proper that such territory should be annexed to defendant city and bear its share of the expense of such municipal service.

The cause was tried on March 13 and 14, 1933, resulting in a denial of the relief prayed for by plaintiffs, and a dismissal of their petition. Whereupon, after an ineffective motion for a new trial, plaintiffs bring the cause to this court by appeal for review.

The facts as shown by the testimony are substantially as follows:

The population of Glendale, a city of the fourth class, was 620 in 1920, 1479 in 1930, and in 1933 it was approximately 1600. Prior to the annexation complained of, there was approximately 565 homes in the city of Glendale, also a school, a church, some business houses, a gas station, a city hall, a tinner's shop, a restaurant on Manchester Road, a sanitarium, a dairy and some barbecue and hot dog stands. In 1920 it enacted a zoning ordinance, classifying the property into two classes, business and residential.

At the time of the annexation its fire department was located near the Kirkwood-Ferguson car line, near Sappington Road, about the center of the city. It had three regular paid men and two relief men, the latter being paid when on duty. It maintained fire plugs along the western boundary of Berry Road, which, prior to the extension, constituted the eastern boundary of the city. It also maintained street lights along Berry Road between Manchester Road and Lockwood Avenue, there being sixteen street lights between those two points and four fire plugs, also a fire plug in Kiel Subdivision about 400 feet east of Berry Road.

It had a bond issue of $25,000 about six years old; $3000 of the principal had been paid and all the interest, leaving the net bond issue of $22,000. The tax rate of the city was fifty-five cents per hundred. The assessed value of the annexed property was approximately $300,000, which, at the fifty-five cents per hundred rate, would yield a little more than $1500 per year.

The police force of the city consists of a chief and two deputies.

In Algonquin Subdivision, which is a part of the original city, there are fourteen lots, but no houses are built on them. The lots are between an acre and two acres in area. North of the Kirkwood-Ferguson car lines there are four made streets.

The annexed area is 6890 feet along Berry Road and on the Rock Hill Village side the distance is 5840 feet. It has a maximum width of 1360 feet and at the narrow end it is 640 feet. It was estimated that the annexed area would have twenty-five per cent reduction in water rates because the water company has a franchise for fire plugs and hydrants, which are paid for by the city. The reduction in insurance rates would vary from eight per cent to seventeen per cent depending on location and nearness to fire plugs.

The general tenor of plaintiffs' testimony was to the effect that property in the annexed area would be decreased in value something like ten per cent by reason of the annexation, but it was also given in evidence that houses abutting upon a road or street which is lighted and has fire plugs would be more salable than property not so situated, and that the policing which would follow annexation would tend to make houses along Berry Road more valuable and that the ten per cent decrease would not apply to the golf club grounds

but only applied to the residential houses, because the club itself received no damage through depreciation by having its grounds taken into Glendale. It was shown that there were a large number of lots in Algonquinwood held and offered for sale by different real estate companies at that time as property to be built upon for residential purposes; that many of the signs for sale were accompanied by the terms "will divide;" that the property in the annexed territory was still worth fifteen per cent more than property in the old part of Glendale; that part of the fifteen per cent increase was directly due to Glendale maintaining municipal street lights and fire plugs along Berry Road and for that reason houses there were worth more; that the lights along Berry Road are a convenience to the club members and a benefit to them; that the property within the annexed area, with the exception along Berry Road and the club property, is held to be brought on the market as soon as the values that the owners thereof can receive for it reaches their ideas of what it is worth.

Thirty-seven acres of the Algonquin Golf Club property is located in the annexed area and the remainder, something like ninety acres, is located in Webster Groves. Defendant does not own its water system, gas plant or sewer system. The annexed area is in the same water shed as the northern part of Glendale. It was the opinion of the Engineer for the City of Webster Groves, that Glendale's sewers would naturally drain through the annexed area as they were both in the same natural sewer district and that the sewage disposal would have to be worked out in conjunction with the sewage disposal of Glendale.

It was further shown that it was necessary for Berry Road to be taken in as a part of the annexed territory because of numerous complaints of excessive speed on the road and of suspiciously parked cars. It was given in evidence that the annexed area had received benefits from defendant's police both before and after annexation; that frequently the Algonquin Club would rent out its rooms to organizations and it had been demostrated to be necessary for the police of Glendale to aid in keeping the peace and attending to the large crowds that congregated there; that the fire department of Glendale had frequently been called both before and after annexation to prevent fires from spreading in the annexed area and to extinguish them.

It was also shown that a large number of residents of Algonquinwood, a portion of the annexed area, had signed a petition in July, 1932, to be presented to the County Court of St. Louis County, to incorporate Algonquinwood as a village. However, it was claimed by plaintiffs in doing so that they did not really want to have municipal government or to levy any taxes, but merely did so to keep from being annexed to Glendale or to Webster Groves.

It was shown that there were 235 resident members of the Algon-

quin Golf Club; that the thirty-seven acres of club grounds included in the annexation includes the clubhouse, caddy house and a swimming pool, and that the assessed valuation of the thirty-seven acres is $1500 per acre.

Some of the inhabitants of the annexed area objected to being taken into Glendale on account of its zoning ordinance, others objected on account of the erroneous idea that their children would have to change schools. Many of the children in the annexed area attend school at Webster Groves.

While practically all of the people interested in the annexed area said that the annexation would reduce the values of their property, yet it was brought out that the property was being held at the same price that it was before annexation. It was shown that much of the stagnation in the matter of selling property was due to the depression. Not all of the annexed area was platted. The area of the annexed portion is approximately one-seventh of the area of Glendale prior to the annexation. It was shown in evidence that the annexed territory includes some of the best real estate for subdivision purposes in St. Louis County and that there are several tracts in the new territory that would be subdivided as soon as conditions became normal again; that the annexed portion is all adaptable for subdivision purposes; that there are no farm lands in the annexed area.

It is provided by section 6947, R. S. Mo. 1929 (8 Mo. Stat. Ann., p. 5714) that the mayor and board of aldermen of a fourth class city "with the consent of a majority of the legal voters of such city voting at an election therefor, shall have power to extend the limits of the city over territory adjacent thereto, and to diminsh the limits of the city by excluding territory therefrom, and shall, in every case, have power, with the consent of the legal voters as aforesaid, to extend or diminish the city limits in such manner as in their judgment and discretion may redound to the benefit of the city." It will be noted that the legislative power conferred on a city of the fourth class to diminish or extend its limits is broad and comprehensive, leaving to the judgment and discretion of the board of aldermen to make such changes as in its opinion will redound to the benefit of the city.

Ordinarily this discretion thus vested will not be interfered with by the courts unless there has been an abuse of such discretion and, unless a clear case of abuse of discretion has been made the courts are not authorized to interfere by holding the ordinances unreasonable and it is the general holding of the courts that where a doubt exists as to the reasonableness of an ordinance extending city limits the doubt should be resolved in favor of the ordinance. [City of Salem ex. rel. Roney v. Young, 142 Mo. App. 160, l. c. 171, 125 S. W. 857; State v. Pond, 93 Mo. 606, 6 S. W. 469; Kansas City v. Block, 175 Mo. 433, 74 S. W. 993; City of Plattsburg v. Riley, 42 Mo. App. 18, l. c. 23; State ex rel. Musser v. Birch, 186 Mo. 205, 85 S. W. 361.]

In Vestal v. Little Rock, 54 Ark. 321, a well considered case, the correct rule in respect to annexation, as that court interpreted the drift of authorities, is set out as follows:

"That city limits may reasonably and properly be extended so as to take in contiguous lands, (1) 'when they are platted and held for sale or use as town lots, (2) whether platted or not, if they are held to be brought on the market and sold as town property when they reach a value corresponding with the views of the owner, (3) when they furnish the abode for a densely-settled community, or represent the actual growth of the town beyond its legal boundary, (4) when they are needed for any proper town purpose, as for the extension of its streets, or sewer, gas, or water system, or to supply places for the abode or business of its residents, or for the extension of needed police regulation, and (5) when 'they are valuable by reason of their adaptability for prospective town uses; . . .

"We conclude further that city limits should not be so extended as to 'take in contiguous lands, (1) when they are used only for purposes of agriculture or horticulture, and are valuable on account of such use, (2) when they are vacant and do not derive special value from their adaptability for city uses. [People v. Bennett, 18 Am. Rep. 111; Cheaney v. Hooser, 9 B. Mon. 330; City v. Southgate, 15 B. Mon. 491; Morford v. Unger, 8 Iowa, 82; New Orleans v. Michoud, 10 La. Ann. 763; Bradshaw v. Omaha, 1 Neb. 16.]"

The Vestal case, supra, has been denominated a famous, a leading case, and copiously and approvingly quoted from by our own Missouri Supreme Court en banc in State ex. inf. Major v. Kansas City, 233 Mo. 162, l. c. 219, et. seq., 134 S. W. 1007.

In cases of this character, the passage of the ordinance and the vote of a majority of the legal voters of the city in favor of the annexation creates a prima facie case in favor of the reasonableness of the ordinance, and the burden is not on the city to prove its reasonableness, but rests on plaintiffs, to prove its unreasonableness. [City of St. Louis v. United Railways, 263 Mo. 387, l. c. 455, 174 S. W. 78; Hislop v. Joplin, 250 Mo. 588, 157 S. W. 625; Bellerive Investment Co. v. Kansas City, 321 Mo. 969, l. c. 990, 13 S. W. (2d) 628; Stoltman v. Clayton, 205 Mo. App. 568, 226 S. W. 315; State v. City of Joplin (Mo. App.), 52 S. W. 602, l. c. 606.]

After a careful reading of the record and the examination of the able and exhaustive briefs of counsel on either side, we have reached the conclusion that plaintiffs have not met the burden imposed upon them of showing that the ordinances under attack are unreasonable.

Plaintiffs contend that the annexation is of no benefit to defendant. This issue is not pleaded, but, assuming it to be a live question, we might reasonably conclude that it was foreclosed against the contention of plaintiffs by the action of the board of aldermen and mayor

in passing the ordinance and in the subsequent ratification of the annexation by the vote of the people. Unquestionably they were imbued with the idea that the annexation would "redound to the benefit of the city." They were planning for the future welfare and expected growth and expansion of their city. Many of the witnesses for the plaintiffs in their testimony apparently minimized the police department and fire department of the city and questioned their efficiency but, the proponents of the annexation doubtless had dreams of future greatness for their city, of expansion, growth, additional municipal activities, more lights, more hydrants, more and better streets, more modern conveniences, including an adequate sewer system through the natural water shed common to it and the annexed area, the latter "a consummation most devoutly to be wished."

It is not only a pardonable, but a commendable human trait, even if it be a weakness, to exalt the place of one's abode or nativity. St. Paul, the super-logician, the great apostle to the Gentiles, and the intellectual giant of the New Testament, made no attempt to conceal this human trait, when, in seeking permission from the chief captain to address an angry mob which had threatened his life, he somewhat boastfully and proudly described himself as being a citizen of Tarsus, "*a city of no mean repute.*"

From the testimony adduced it appeared that much of the added area to defendant city was a veritable garden of Eden, including the beautiful grounds of the Golf Club; and that all of it had urban values, and was, in the opinion of Edward F. Wilson, a real estate man of twenty-two years experience (a witness called by plaintiffs), "the best real estate for subdivision purposes in the county of St. Louis." The mere inclusion of this territory within defendant's corporate limits would seem to be of benefit to the city, to say nothing about the added revenue which might properly be expected and used to aid in the advancement of the enlarged city.

It is also contended by plaintiffs that a substantial portion of the annexed area being unplatted would render the extension void. However, the courts do not so hold. [Vestal v. Little Rock, 54 Ark. 321, l. c. 323; State ex. rel. Scott v. Lichte, 226 Mo. 273, 126 S. W. 466; City of Salem ex. rel. Roney v. Young, 142 Mo. App. 160, l. c. 171, 125 S. W. 857.]

The testimony shows that the unplatted portions of the annexed area is either on the market, or, to be brought on the market for sale as town property, when they reach a value corresponding with the views of the owners.

Complaint is made by plaintiffs as to the exclusion of their proffered testimony in respect to admissions on the part of some member, or members, of the board of aldermen to the effect that the extension of the city limits was for revenue only. The fact, if it be a fact, that

such admission was made that expectation of additional revenue was one of the motives in promoting the extension, would not have militated against the reasonableness of the ordinances, for it was perfectly proper that additional revenue should be expected as a result of the extension.

Complaint is also made as to the exclusion of proffered testimony to the effect that those in the annexed area who had signed the petition, which was submitted to the County Court to have Algonquinwood incorporated as a village, did not do so for the purpose of having the village to exercise municipal authority, but that the signers were actuated solely by a desire to keep out of other adjacent municipalities. We think that their desire to keep from being annexed by any of the municipal corporations surrounding them was fully shown by the testimony of such signers who were called as witnesses, and could not have been more forcefully shown had the proffered testimony been admitted. The motives of these signers, fantastic or otherwise, could have had no bearing on the merits of the instant case.

Giving due deference to the finding of the trial judge we have reached the conclusion that the judgment of the circuit court should be affirmed and it is so ordered.

*Becker* and *McCullen, JJ.,* concur.